369 So.2d 1251 (1978)
In re Recardo COOK
v.
STATE of Alabama.
Ex parte Recardo Cook.
77-320.
Supreme Court of Alabama.
September 15, 1978.
As Corrected on Denial of Rehearing February 9, 1979.
*1252 J. Louis Wilkinson and Charles M. Purvis of Wilkinson, Purvis & Pickard, Birmingham, for petitioner.
William J. Baxley, Atty. Gen. and James L. O'Kelley, Asst. Atty. Gen. for the State, OPPOSED.
FAULKNER, Justice.
Recardo Cook was convicted of "robbery. . . when the victim is intentionally killed." § 13-11-2(a)(2), Code of Ala.1975. After a sentencing hearing held by the trial court, Cook was sentenced to death. His conviction and punishment were upheld by the Court of Criminal Appeals. This court granted certiorari as a matter of right. ARAP 39(c).
Cook urges two grounds for reversal: (1) that the Alabama Death Penalty Act is unconstitutional, and (2) that the trial court committed error by not correcting certain prosecutorial arguments allegedly containing prejudicial or erroneous material.
We affirm Cook's conviction, but opine that the sentencing hearing did not comport with the constitutional standards outlined in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and Jacobs v. State (Ala.1978, opinion extended on rehearing Aug. 11,1978), 361 So.2d 640, and remand for another sentencing hearing pursuant to the procedures outlined in this opinion.
On March 4, 1977, one week after the jury returned its guilty verdict, the trial judge held the sentencing hearing required by § 13-11-3, Code of Ala.1975. Present at the hearing were the trial judge, a district *1253 attorney, one member of Cook's defense team, and Cook himself. The State began by presenting Cook's "prior record or his involvement in other criminal activities." It was revealed that in 1972 Cook was charged with assault with intent to murder, but this charge was reduced to malicious destruction of property with a $100 fine. In addition, in 1975 Cook was alleged to have robbed the "Red One Shop." The trial judge was informed that there were two purported eyewitnesses and that a tag number was taken for Cook's sister's car (the same car reportedly used in the murder of Webb.) The witnesses did not appear at the hearing. According to the district attorney, "There was no physical violence involved at all other than the use of a gun."
Defense counsel rebutted by pointing out that malicious mischief with a $100 fine probably would not equal a "significant history" and that Cook was still presumed innocent on the pending robbery charge. Counsel also stated briefly that it was shown at trial that Cook had a good work history at a local factory but had been laid off shortly before the murder. Defense counsel showed that Cook was 22 at the time the crime was committed, but the trial judge did not feel Cook's age presented a mitigating circumstance. Counsel then emphasized that immediately prior to trial Cook had been offered life imprisonment for a guilty plea, arguing that Cook should not now be sentenced to death simply because he insisted on a trial by jury. The State then asserted that it was now seeking the death penalty for deterrence reasons, to avoid "making it open season out there." The trial judge refused to consider these last arguments.
After this brief discussion the trial judge began to consider, seriatim, the aggravating and mitigating circumstances listed in §§ 13-11-6 and 13-11-7, Code of Ala.1975.[1] Under § 13-11-7 (mitigating circumstances) the trial judge stated, "I would agree that he probably has no significant history, but he does have a history." He later incorporated this statement in his findings of fact where he discussed the 1972 assault with intent to murder and its final outcome and also detailed the pending robbery charge. The trial judge thought this was the only mitigating circumstance present, although it was obviously very limited in his mind. Under § 13-11-6 (aggravating circumstances) the trial judge found two present, (4) a capital felony committed in the course of a robbery, and (6) a capital felony committed for pecuniary gain, and *1254 these were both listed in his findings of fact. Consequently, since he did not think the mitigating circumstances outweighed the aggravating circumstances, the trial judge "allowed the jury's verdict to stand."

I.
As to the first issue raised by the defendant, the constitutionality of Alabama's Death Penalty Act, our recent consideration of this point in Jacobs v. State eliminates the need for further discussion of the general statutory provisions here.

II.
Nor do we find merit in defendant's contention that his conviction must be reversed because of allegedly prejudicial or erroneous material in the prosecutor's closing argument. Specifically, defendant objects to two portions of the argument. The first comment complained of occurred as follows:
"MR. JOHNSON [Assistant District Attorney]: Don't you know that right now out there on every corner, in every little store, in every little Quick Mart, in every little 7-11 Store they are out there, the owners, the proprietors, and they are considering the odds. They are wondering which way you're going to stack them. Don't you know that the Recardo Cooks and the would be Recardo Cooks of this world are out there and they are considering the odds too. Don't you know they are wondering if you're going to say to them, `We're going to give you a license. We're going to give you a license to kill.'
"MR. WILKINSON [Defense Counsel]: We object to any argument that suggests the jury giving other people license to kill. We object to that.
"THE COURT: Well, that wouldn't be I sustain.
"MR. WILKINSON: Did you sustain?
"THE COURT: Yes, sir.
"MR. WILKINSON: Would you instruct the jury to disregard his last argument?
"THE COURT: I sustained. Go ahead."
It is clear that a district attorney in closing argument may make a general appeal for law enforcement. Embrey v. State, 283 Ala. 110, 118, 214 So.2d 567 (1968). In Cross v. State, 68 Ala. 476 (1881), this Court observed:
"[C]ounsel is in legitimate bounds, when he urges a firm and fearless administration of the criminal law, as the great conservator of human life, and of the repose of society; and is not within reversible grounds, when he complains generally that juries are frequently more inclined to mercy than to judgment. On the other hand, counsel may warn juries against hasty or harsh verdicts, and may invoke the humane mercies of the law, which accords to persons accused the saving benefit of all reasonable doubts." 68 Ala. at 483.
In line with this principle, this court allowed the argument of the district attorney in Embrey that, "`You have got to determine whether or not these juries are going to stop these robberies from going on.'" 283 Ala. at 118, 214 So.2d at 575. See also Davidson v. State, 211 Ala. 471, 100 So. 641 (1924). In fact, the comment objected to in this case is distinguishable only in the severity of the crime and punishment from that allowed in Blalock v. State, 8 Ala.App. 349, 63 So. 26 (1913), where the solicitor stated, "`If you turn this man loose, it will be a license for all them people up there in beat 24 to turn their stock out.'"In approving this argument the Court of Appeals stated:
"The excerpt from the argument of the solicitor . . . cannot be taken to mean more, when construed in connection with the evidence, than that it was the duty of the jury to convict the defendant, if the evidence was sufficient, for the purpose of deterring others from committing similar offenses. This is one of the objects sought to be attained by the enforcement of the criminal laws and punishment of offenders against it. At most it could be deemed no more than an argument, intended to illustrate the evil consequences *1255 that might result from a failure of the jury to do their duty in the premises if the evidence was sufficient to authorize a conviction. It does not appear from the isolated excerpt set out that the solicitor was asserting any fact, and it is not error to refuse to exclude the argument of counsel, although not strictly pertinent, when no fact is asserted, but simply an inference is drawn and argument made thereon."
Since the argument complained of did not imply that Cook himself would commit other illegal acts in the future the comment did not overstep the bounds of legitimate argument.
In this same vein defendant also objects to another portion of the district attorney's closing argument where the following occurred:
"MR. JOHNSON: This is the first case that the death penalty was reinstated. Don't you think the people who represent the people of Alabama have something in mind when they restored the death penalty. Don't you think that they had in mind people like the Mr. Tortoricis of the world out in their grocery stores.
"MR. WILKINSON: We object to all this referring to other specific incidents and things of that sort, that type of argument, and we object to it.
"THE COURT: Overrule.
"MR. WILKINSON: We except."
The rule governing the permissible scope of argument was succinctly stated by this court in Johnson v. State, 272 Ala. 633, 133 So.2d 53 (1961):
"It is sometimes difficult to draw the line between allowable argument and improper statements in argument. The rule is that an attorney cannot be allowed to state anything as a fact as to which there is no evidence. . . But the solicitor may properly comment upon the evil generally of the crime which the law he is seeking to enforce intends to prevent. . . It is only when the statement is of a substantive, outside fact stated as a fact and which manifestly bears on a material inquiry before the jury, that the court can interfere and arrest discussion." 272 Ala. at 637, 133 So.2d at 56.
Here defendant objected to the prosecutor's remark about "Mr. Tortorici" as a reference to "other specific incidents." Certainly counsel could not draw comparisons between the case at bar and another case, the facts of which are not and could not be in evidence. See, e. g., Roy v. State, 24 Ala. App. 419, 136 So. 273 (1931), where a comparison was made to a then notorious New York murder case. However, the record here does not give any indication of who Mr. Tortorici is or was, if he is in fact a real person. Defense counsel invites us to assume that Mr. Tortorici was the proprietor of a grocery store and was slain in a robbery. It is just as possible, on the other hand, that he is a purely hypothetical figure. Without more facts we simply cannot tell, and we cannot presume that this comment was prejudicial error upon such a sketchy background. The trial judge, a local resident presumably acquainted with the city's more notorious crimes, did not consider the comment so prejudicial as to warrant exclusion or curative instructions to the jury. Consequently, we will not disturb his ruling on the record presented here.

III.
We opine that the sentencing hearing contained errors which can only be corrected by remanding the case for a new sentencing hearing. We realize, of course, that the same result may very well be reached on remand. Nevertheless, it is the duty of this court to insure that no error has tainted the trial or the sentencing process.[2] This duty is a constitutionally mandated one stemming from "the nonavailability of corrective or modifying mechanisms with respect to an executed capital *1256 sentence." Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978).
In Lockett the U. S. Supreme Court outlined the constitutional requirements for a sentencing hearing in a capital case. In a plurality opinion joined by Justices Stewart, Powell, and Stevens, the Chief Justice declared:
"[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.. . . Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases.. . .
"[A] statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." 438 U.S. at 604-05, 98 S.Ct. at 2965. (Emphasis added.)
The Chief Justice noted that the Court assumed, in upholding the Florida death statute in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), that a list of mitigating factors contained in that statute was not exclusive. 438 U.S. at 605, 98 S.Ct. 2954.
Lockett was not released until after this court upheld Alabama's Death Penalty Act in Jacobs v. State. Nevertheless, on rehearing in Jacobs we considered the possible impact of Lockett on Alabama's statute. In an extended opinion we noted that Lockett does not invalidate Alabama's sentencing scheme in death cases since § 13-11-3, Code of Ala.1975, specifically allows any relevant evidence in mitigation to be presented at the sentencing hearing. That statute reads in part:
"In the hearing, evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13-11-6 and 13 -11-7. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements; provided further, that this section shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the state of Alabama. The state and the defendant, or his counsel, shall be permitted to present argument for or against the sentence of death." (Emphasis added.)
We are left with the problem of categorizing the evidence received and balancing the aggravating circumstances with the mitigating circumstances. At Cook's sentencing hearing the trial judge found that two aggravating circumstances were present: (4) a capital felony committed in the course of a robbery, and (6) a capital felony committed for pecuniary gain. In so finding we feel that the learned trial judge misconstrued the latter aggravating circumstance, in effect condemning Cook twice for the same culpable act stealing money. Subsection 6 would, of course, cover a variety of crimes committed with the hope of financial benefit, ranging from "murder-for-hire" to an heir killing his benefactor to gain his inheritance. But we do not think it appropriate to apply this aggravating circumstance to situations already condemned under subsection 4 which by definition involve an attempt at pecuniary gain. Thus, to avoid repetition, subsection 6 should not be applied to a robbery. The trial court erred in considering it and including it in the findings of fact.
*1257 We also find error in the trial court's application of one of the enumerated mitigating circumstances, "(1) The defendant has no significant history of prior criminal activity." The key word in this provision is significant. Thus the trial judge erred when he determined that Cook had no significant history "but he does have a history" and proceeded to detail Cook's criminal background in his findings of fact. The legislature has indicated that lack of a significant criminal history should operate in a convicted individual's favor. A court cannot qualify this provision by relying on prior criminal activity which does not rise to the level established by the legislature.
In fact, Cook's background presents even less of an admissible criminal history than the trial judge believed. At the hearing the trial judge improperly considered evidence of a pending robbery charge and in effect decided that case without benefit of a trial by jury. Of course, it could not seriously be contended that evidence could be presented of a prior acquittal even though the defendant had clearly escaped justice on the most technical of technicalities. Consequently, a pending charge cannot be considered either. Cook may well be convicted at some future date of this robbery, but then again he may not be convicted for any number of reasons. Until the State proves him guilty of this charge in accordance with appropriate legal procedures Cook is presumed innocent. This fundamental tenet of our system of justice prohibits use against an individual of unproven charges in this life or death situation.
Nor do we think it appropriate, in considering a previously adjudicated criminal charge, to admit evidence of the original charge as was done in Cook's case. Here the trial judge stated in his findings of fact that Cook was "charged in 1972 for assault with intent to murder, which was reduced to malicious destruction of property, fined a hundred dollars and costs." Instead the court must rely on the prior judge's decision that Cook's acts were most appropriately treated as malicious destruction of property. Once judgment is entered the original charges become irrelevant. Thus it is apparent that of Cook's "prior criminal history" the only thing that could properly be considered is a 1972 conviction for malicious destruction of property with a $100 fine and costs. This single conviction hardly constitutes "a significant history of prior criminal activity" so this mitigating circumstance should have operated fully in favor of Cook.
Once all of the proper evidence has been received at the sentencing hearing and arguments have been given, the trial judge must "weighing the aggravating and mitigating circumstances" and sentence the defendant to death or life imprisonment without parole. § 13-11-4, Code of Ala.1975. This "balancing" should not, however, be construed to authorize a "tallying" of items for and against the defendant. We can readily envision situations where several aggravating circumstances may not be sufficient to outweigh only one mitigating circumstance and, on the other hand, where numerous mitigating circumstances may be present but opposed to one aggravating circumstance so outrageous as to justify the death penalty. In conducting these hearings trial judges should keep in mind their ability to order presentence investigations and psychiatric evaluations to obtain a full picture of the defendant.
We realize, of course, that many of the errors at the sentencing hearing were not objected to and therefore would not normally be subject to review. But where the State proposes to take a life as punishment for crime, it is our duty to insure that the proper result is reached. At the time of Cook's trial no cases interpreting this statute were available for guidance to the court or to the parties and, considering that they were forging into undeveloped areas of the law, the participants did an admirable job of applying this untested law to an actual fact situation. Nevertheless, we feel that justice will best be served by allowing the trial judge to resentence Cook under the guidelines now established by this court and the U.S. Supreme Court.
*1258 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED TO THE COURT OF CRIMINAL APPEALS WITH DIRECTIONS TO ORDER A REHEAING IN THE CIRCUIT COURT ON THE MITIGATING CIRCUMSTANCES.
TORBERT, C. J., and EMBRY and BEATTY, JJ., concur.
BLOODWORTH, J., with whom ALMON, J., concurs, concurs specially.
MADDOX, J., concurs specially.
JONES and SHORES, JJ., dissent.
BLOODWORTH, Justice (concurring specially).
I concur in the result of Mr. Justice Faulkner's opinion to reverse and remand this cause for resentencing because I agree that the trial judge erred in improperly considering aggravating circumstance (6).
I also agree with Mr. Justice Maddox' special concurrence where he writes that Alabama's statute "broadly permits a defendant to `proffer' any circumstance" and that the burden is on the defendant to offer such mitigating circumstances. I also agree with him that the trial judge erred in refusing "to consider, as a mitigating circumstance, that Cook may have been offered life imprisonment for a guilty plea."
We cannot tell from the trial judge's decision whether he would have affirmed the death penalty had he not considered aggravating circumstance (6) or had he considered the offer of life imprisonment. Consequently, a remand is in order.
ALMON, J., concurs.
MADDOX, Justice (concurring specially).
I concur in parts I and II of the opinion. As to part III, I concur in the result only.
After reading the entire transcript of the sentencing hearing, I am convinced that the trial judge conducted a proper sentencing hearing, except for one point; he refused to consider, as a mitigating circumstance, that Cook may have been offered life imprisonment for a guilty plea. During the sentencing hearing, defendant's counsel stated:
"Lastly, I would say that the fact nine or ten days ago the Defendant was considered to be a candidate for life imprisonment, and because he asserted that he was not guilty and went to trial and got convicted he now stands the risk that he knew he would stand of capital punishment. But the only thing that happened in those nine days that I know of is that he had a jury trial and has been convicted. I don't think his personality has changed a great deal or his background or anything else. I would think under those circumstances if anybody under this act, and I mean there is always aggravating circumstances or you are not under the act, but if anybody under this act deserves mitigation it would be somebody who had two of the mitigating factors present and who was originally sought and adjudged the type of person who should not suffer capital punishment. With that statement we rest.
* * * * * *
"MR. WILKINSON: The Legislature also said that there are mitigating circumstances even where there were aggravating circumstances that put somebody under the death penalty. The State did not feel about ten days ago that Recardo Cook needed to die to satisfy anything. They didn't feel that Recardo Cook needed to die to protect the public in any particular way. Recardo Cook's need to die seems to have arisen after Recardo Cook's trial. I would submit the only thing that has changed is the fact that he decided to assert and does assert that he was not guilty, went to trial and lost.
"THE COURT: I'm not going to consider that one way or the other, Mr. Wilkinson. I don't think that is proper for me at all to consider that.
MR. WILKINSON: So far as their position is concerned I do.
"THE COURT: I know, but as far as mine is concerned I don't."
In refusing to consider the fact that Cook may have been offered life imprisonment *1259 for a guilty plea, I think the trial court erred and I would remand on this ground.
I disagree with the plurality insofar as they hold that the sentence cannot stand because the sentencing judge found, as an aggravated circumstance, that the capital felony was committed for pecuniary gain. Even assuming that this particular aggravating circumstance was not applicable in this case, § 13-11-4 only requires that the sentencing judge find "one or more of the aggravating circumstances." (Emphasis added.)
The trial judge, during the sentencing hearing, went down the list of aggravating circumstances contained in § 13-11-6 and made the following observations:
"The aggravating circumstances; `The capital felony was committed by a person under sentence of imprisonment.' That does not apply in this case. He was not under a sentence of imprisonment.
"`The Defendant was previously convicted of another capital felony or a felony involving the use of threat of violence to the person.' That does not apply to this case.
"`The Defendant knowingly created a great risk of death to many persons.' I don't think that's present.
"`The capital felony was committed while the Defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary, or kidnapping for ransom.' That is present but, of course, that is what he was charged with. The deed of the aggravating circumstance is present.
"`The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or affecting an escape from custody.' That is not present.
"`The capital felony was committed for pecuniary gain.' That is present. There's evidence that it was committed for $3,000.
"MR. WILKINSON: Of course, again, a robbery
"THE COURT: I understand. I understand.
"`The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.'
"`The capital felony was especially heinous, atrocious or cruel.' Well, I don't really know what they're talking about there. I'll say at best this felony was totally senseless. I don't know about cruel, what people's different definitions of atrocious or heinous or cruel is, what whether they're talking about torture or what, but if robbing somebody and taking their money and then shooting them through the heart is considered heinous then this crime was heinous. I don't know that that's what they're talking about. I'll be honest with you, I really don't know. Does anybody want to say anything about that?
"MR. WILKINSON: I'll just say that the word `especially' I think you're right. Any time that there is a death penalty, and we have always got to keep in the background, that any time there is a death penalty case or a prosecution under this particular law you have somebody killed and you have somebody killed intentionally and as a general rule killed in the commission of a robbery or some other kind of felony. Now, those things are always, yes, heinous, atrocious or cruel, I'll buy that. I think the key word is especially. I think what the legislature is talking about is something over and above that, whether it be torture, whether it be prolongation of the offense or whatever, but the key word is especially. I would think that would be the key word. They acknowledge any crime under this section is heinous, atrocious or cruel, but the reason for the word especially, it seems to me, would be to indicate that something in addition should be for that aggravating circumstance."
The plurality, on rehearing, modified the original opinion, and the opinion now reads:
". . . Subsection 6 [§ 13-11-6(6)] would, of course, cover a variety of crimes committed with the hope of financial *1260 benefit, ranging from `murder-for-hire' to an heir killing his benefactor to gain his inheritance. But we do not think it appropriate to apply this aggravating circumstance to situations already condemned under subsection 4 which by definition involve an attempt at pecuniary gain. Thus, to avoid repetition, subsection 6 should not be applied to a robbery. The trial court erred in considering it and including it in the findings of fact."
I disagree with this portion of the opinion.
It is perfectly clear to me that the trial judge found at least one of the aggravating circumstances to exist. That is enough. However, a fair reading of the colloquy shows that the evidence supported a finding that Cook committed a capital felony for pecuniary gain. I think the plurality errs in determining that the aggravating circumstance in subsection 6 is inapplicable when the evidence shows that the accused intentionally killed the victim in a robbery. There are fourteen categories of "aggravated offenses," and only eight "aggravating circumstances." Subsection 6, in my opinion, could apply under several of the fourteen "aggravated offense" categories, including intentional killing of robbery victims, as presented here.
I make a couple of other observations. As I view Lockett v. Ohio, the sentence there was set aside because the statute under which it was imposed did not permit the sentencing judge to consider, as mitigating factors, the defendant's character, prior record, age, lack of specific intent to cause death, and relatively minor part in the crime.
As the majority correctly points out, Alabama's sentencing scheme provides that at the sentencing hearing, evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to any of the mitigating circumstances enumerated in § 13-11-7, Code of Alabama, 1975.
In Lockett, the Court speaks of mitigating circumstances "proffered" by the defendant. Alabama's statute broadly permits a defendant to "proffer" any circumstance. This record is devoid of any evidence that the defendant was hampered, circumscribed or otherwise prevented from presenting mitigating evidence; therefore, I disagree with any suggestion that the burden is on the state or the judge to proffer mitigating evidence the only obligation on the state is, as Lockett holds, to permit the defendant to present mitigating evidence. Alabama permits that.
JONES and SHORES, Justices (dissenting).
For the reasons stated in our separate opinions in Jacobs v. State, supra, we dissent.

ON REHEARING
FAULKNER, Justice.
The opinion is corrected and application for rehearing overruled.
TORBERT, C. J., and EMBRY and BEATTY, JJ., concur.
BLOODWORTH, MADDOX and ALMON, JJ., concur in overruling the application for rehearing.
JONES and SHORES, JJ., dissent.
NOTES
[1] The statutes read:

§ 13-11-6. Aggravating circumstances.
Aggravating circumstances shall be the following:
(1) The capital felony was committed by a person under sentence of imprisonment;
(2) The defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person;
(3) The defendant knowingly created a great risk of death to many persons;
(4) The capital felony was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping for ransom;
(5) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or affecting an escape from custody;
(6) The capital felony was committed for pecuniary gain;
(7) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws; or
(8) The capital felony was especially heinous, atrocious or cruel.
§ 13-11-7. Mitigating circumstances.
Mitigating circumstances shall be the following:
(1) The defendant has no significant history of prior criminal activity;
(2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;
(3) The victim was a participant in the defendant's conduct or consented to the act;
(4) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor;
(5) The defendant acted under extreme duress or under the substantial domination of another person;
(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and
(7) The age of the defendant at the time of the crime.
[2] "[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977).