443 So.2d 47 (1979)
Phillip Wayne TOMLIN
v.
STATE.
1 Div. 23.
Court of Criminal Appeals of Alabama.
November 20, 1979.
Rehearing Denied December 18, 1979.
*50 Richard D. Horne and James E. Atchison, of Hess, Atchison & Stout, Mobile, for appellant.
Charles A. Graddick, Atty. Gen. and Joseph G.L. Marston, III, Asst. Atty. Gen., for the State.
BOOKOUT, Judge.
Murder in the first degree wherein two or more human beings are intentionally killed, and murder in the first degree when the killing was done for a pecuniary or other valuable consideration or pursuant to a contract or for hire; sentence: death by electrocution.
The State's evidence was sufficient to justify appellant's conviction even though there was no eyewitness testimony concerning the double killings. It is therefore unnecessary for the purposes of this appeal to narrate a detailed account of the brutal and calculated murders contained in the voluminous record before us. Briefly, the facts are as follows:
At approximately 5:30 p.m. on January 2, 1977, at the Theodore-Dawes Exit to Interstate 10 in Mobile, nineteen-year-old Ricky Brune and fifteen-year-old Cheryl Moore were found dead in the front seat of Brune's car. Their deaths resulted from multiple gunshot wounds in the back from a sixteen-gauge shotgun and a .38 caliber pistol. The fatal shots were fired from inside the car from the rear seat. An unoccupied 1968 Ford had been spotted parked at the exit with the motor running at 4:50 p.m.
The appellant and his "partner," John Ronald Daniels, had arrived in Mobile at Randy and Danny Shanks' trailer the night before between 11:30 and 12:00 p.m. after travelling from Houston, Texas. The Shankses were the appellant's brothers-in-law. The appellant introduced Daniels as his "hit man" and told the Shankses "he had come to Mobile to get revenge ... on the guy that killed his brother ... [that] he was going to kill the person who killed his brother." The appellant's brother had been killed as a result of an accidental shotgun discharge which involved Ricky Brune on November 25, 1975.
After midnight on January 2, Randy Shanks rented a room at the Eight Days Inn for appellant and Daniels. Inside the motel room the appellant and Daniels showed the Shankses the .38 and .44 caliber pistols and a disassembled sixteen-gauge shotgun. The weapons were kept in a satchel. Later, the appellant drove the Shankses back to their trailer and asked Danny if he could use his car "the next day to get out of town." Danny told him no, that he "didn't want to get involved in it." The appellant was driving his sister's 1968 Ford.
The appellant and his "hit man" Daniels were last seen in Mobile between 3:00 and 4:00 p.m. the afternoon of the murders at the Highway 90 Lounge located two miles north of the Theodore-Dawes Exit. Outside the lounge inside his sister's car, the *51 appellant had conversations with the Shanks brothers and James Stokes. The appellant was next seen in Houston, Texas, late that night. His sister's 1968 Ford was found abandoned at the New Orleans International Airport.

I
The appellant contends that Counts 1 and 3 of the indictment were defective and that his demurrer to those counts should have been granted. We do not agree. Omitting the formal parts, the indictment charges that the appellant, Phillip Wayne Tomlin:
"... did unlawfully, intentionally, and with malice aforethought kill Richard Brune and Cheryl Moore by, towit: on January 2, 1977, at a location on or near Interstate 10 in Mobile County, Alabama, was shot with a gun, in violation of Act Number 213, Section 2, Sub-Section J (Act # 213, § 2(j)), Acts of Alabama, Regular Session, 1975, against the peace and dignity of the State of Alabama. "... did unlawfully, intentionally, and with malice aforethought kill Richard Brune and Cheryl Moore by shooting Richard Brune and Cheryl Moore with a gun, said killings were done for a pecuniary or other valuable consideration, or pursuant to a contract or for hire, in violation of Act Number 213, Section 2, Sub-Section G (Act # 213, § 2(g)), Acts of Alabama, Regular Session, 1975, against the peace and dignity of the State of Alabama.
"... did unlawfully, intentionally, and with malice aforethought kill Richard Brune and Cheryl Moore, by shooting them with a gun, wherein both Richard Brune and Cheryl Moore were intentionally killed by PHILLIP WAYNE TOMLIN by one or a series of acts, in violation of Act Number 213, Section 2, Sub-Section J (Act # 213, § 2(j)) and Act Number 213, Section 6, Sub-Section H (Act # 213, § 6(h)), Acts of Alabama, Regular Session, 1975, in that said killings were especially heinous, atrocious or cruel...."
Appellant pled not guilty to the charges at his arraignment on October 13, 1977. He reserved the right to file special pleas within twenty days. Appellant did not file his demurrer to the indictment until March 20, 1978, after the jury had been empaneled. We hold that appellant's indictment was not subject to demurrer, and in any event the delay in filing constituted a waiver.
Recently we reaffirmed long standing principles recognized by this court and the Alabama Supreme Court by holding the following:
"Generally, a demurrer is the proper procedure to raise defects in an indictment. Andrews v. State, 344 So.2d 533 (Ala.Cr. App.), cert. denied, 344 So.2d 538 (Ala. 1977). Since a plea to the merits admits the validity of an indictment, a demurrer filed after arraignment and after a plea of not guilty is properly stricken. Underwood v. State, 248 Ala. 308, 27 So.2d 492 (1946). The right to file a demurrer is waived unless the demurrer is filed before a plea to the merits. Holloway v. State, 37 Ala.App. 96, 64 So.2d 115, cert. denied, 258 Ala. 558, 64 So.2d 121 (1953). If an indictment is merely voidable and subject to demurrer, the failure to demur will prevent appellate review of the indictment's short comings. Williams v. State, 333 So.2d 610 (Ala.Cr.App.), affirmed, 333 So.2d 613 (Ala.1976)." Edwards v. State, 379 So.2d 336 (Ala.Cr. App.1979).
Of course if an indictment is void as opposed to voidable, as where the indictment does not on its face charge an offense, or where the accused is left unaware of the nature and cause of the charge against him, this court is bound to take notice of such defect even in the absence of an objection. Edwards, supra; Davidson v. State, 351 So.2d 683 (Ala.Cr.App.1977); Fitzgerald v. State, 53 Ala.App. 663, 303 So.2d 162 (1974). If the indictment had been void rather than voidable, the defect would have been reached by the appellant's request for an affirmative charge. Edwards, supra; Coker v. State, 18 Ala.App. *52 550, 93 So. 384 (1922). The defect could have been preserved by a motion in arrest of judgment. Francois v. State, 20 Ala. 83 (1852).
In the instant case, however, each count of the indictment stated an offense in such a manner as to apprise appellant of the nature of the charges against him. We hold, therefore, that the indictment was not void on its face and that the trial court was correct in overruling the untimely demurrer.
Even had the demurrer been timely filed, we hold that the faulty grammar in Count 1 was not objectionable.
"Before an objection because of false grammar, incorrect spelling, or mere clerical errors is entertained, the court should be satisfied of the tendency of the error to mislead, or to leave in doubt the meaning of the charge to a person of common understanding, reading, not for the purpose of finding defects, but to ascertain what is intended to be charged. Grant v. State, 55 Ala. 201 (1876). Neither clerical nor grammatical errors vitiate an indictment unless they change the words or obscure the meaning, Grant, supra, or unless the error changes a word into one of different import or the sense is so obscure that one of ordinary intelligence cannot determine with certainty the meaning from the context. Sanders v. State, 2 Ala.App. 13, 56 So. 69 (1911)...."

Cook v. State, 369 So.2d 1243 (Ala.Cr. App.1977), affirmed in part, reversed in part on other grounds, 369 So.2d 1251 (Ala.1978).
The sense of Count 1 in the indictment is clear. The grammatical error did not obscure the sense of what was intended to be charged.
Contrary to appellant's argument that Count 1 of the indictment charges no more than the first degree murder of two persons, we hold that the requisite language of § 13-11-2(a)(10), Code of Ala. 1975, is sufficiently followed to charge a capital offense. The Alabama Supreme Court has specifically held that the capital offense expressed in § 13-11-2(a)(10) is murder aggravated by two or more individuals being killed. Ex parte Clements, 370 So.2d 723, 726 (Ala.1979). It is thus distinguishable from traditional noncapital first degree murder.
It was proper that each count allege that the killings were done "unlawfully, intentionally, and with malice aforethought," elements of the first degree murder statute, rather than solely done intentionally. Section 13-11-2(a)(10) requires proof of (1) murder in the first degree (2) wherein two or more people are intentionally killed by the defendant. Thus first degree murder and an intentional killing must be alleged and proved under the instant statute.
Count 3 of the indictment was likewise not subject to demurrer for concluding that "said killings were especially heinous, atrocious or cruel"language found in § 13-11-6(8). That language was mere surplusage to the first part of Count 3 which properly charged a capital offense under § 13-11-2(a)(10). As early cases have held, unnecessary averments in an indictment do not impair its validity. The most that can result from them is to hold the prosecution to the proof of them. Aaron v. State, 39 Ala. 75 (1863). Johnson v. State, 35 Ala. 363 (1860); Lindsay v. State, 19 Ala. 560 (1851). Surplusage does not vitiate an indictment otherwise good. McDaniel v. State, 20 Ala.App. 407, 102 So. 788, cert. denied, 212 Ala. 415, 102 So. 791 (1924). As long as the remaining portions of an indictment validly charge a crime, the existence of surplusage will not affect the validity of a conviction. United States v. Hyde, 448 F.2d 815 (5th Cir.), cert. denied, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1971).

II
Appellant contends that the trial court erred in failing to exclude the State's evidence relating to Count 2 of the indictment. Appellant correctly maintains that the State presented no evidence that the appellant *53 himself committed the killings for pecuniary gain or pursuant to a contract or for hire. It is thus argued that appellant's motion to exclude the State's evidence for failure to prove a prima facie case under Count 2 of the indictment should have been granted.
In addition, the trial court at the sentence hearing specifically found that the killings were not committed for pecuniary gain and also that the appellant was not an accomplice, but was an actual participant in the murders. It is argued that the trial court's determination after the sentence hearing that the killings were not committed for pecuniary gain is in direct conflict with his denial to exclude the State's evidence as to Count 2 of the indictment at the trial. The above two contentions, while logical and persuasive, must fail. We shall address appellant's arguments separately.

A
The evidence clearly demonstrated that John Ronald Daniels, appellant's "partner," was a "hit man." Appellant had come to Mobile to get "revenge" for the death of his brother. The inference is clear that appellant's "partner" Daniels was to commit the killings pursuant to a contract or for hire. This evidence decidedly falls within the parameters of a murder done for pecuniary gain or pursuant to a contract or for hire as defined in § 13-11-2(a)(7), Code of Ala.1975.
It does not matter that the appellant himself did not commit the murders. A jury question was presented as to whether appellant was Daniels' accomplice. The jury was correctly charged on the law regarding accomplice participation in a crime.
Under the accomplice statute, § 13-9-1, Code of Ala.1975:
"The distinction between an accessory before the fact and a principal, between principals in the first and second degrees, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors." (Emphasis added.)
The applicability of the accomplice statute to the death penalty statute has been discussed in Colley v. State, 405 So.2d 374 (Ala.Cr.App.1979); in a special concurrence in Ritter v. State, 375 So.2d 266 (Ala.Cr. App.1978); and by the Alabama Supreme Court in Ritter v. State, 375 So.2d 270 (Ala.1979). A general verdict of "guilty of murder as charged in the indictment" was returned by the jury. Conceivably the jury could have found appellant guilty under Count 2 of the indictment. We find that the accomplice statute is applicable to sustain the verdict in the instant case.
The circumstantial evidence was ample for the jury to have found that the appellant was an active participant in the murders and that he was present at the scene of the murders with a view to render aid to Daniels as it became necessary. Where the evidence presented raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion to exclude the State's evidence does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969). Thus by way of the accomplice statute, Count 2 of the indictment was properly allowed to remain before the jury for their consideration. We do not say that the jury found the appellant guilty under Count 2, only that they properly had the option of so finding.

B
As to the second part of appellant's argument, we hold that the trial court could properly have found at the sentence hearing in considering the aggravating and mitigating circumstances that the killings were not committed for pecuniary gain and that the appellant was not an accomplice to the murders. Sections 13-11-6(6) and 13-11-7(4), Code of Ala.1975. This is so despite the fact that the trial court had previously given the jury the option of deciding *54 these same questions of fact by properly allowing, as we have determined, Count 2 to remain before the jury for their consideration. This seemingly anomalous result is peculiar to the death penalty statute and is explained as follows.
A basic legislative concern underlying our death penalty statute is that the sentence hearing be kept separate and apart from the trial itself and from any jury input as to the ultimate sentence to be imposed which is either death or life without parole. Section 13-11-3, Code of Ala. 1975. The sentence hearing is conducted by the trial court sitting alone and only upon a prior jury determination at the trial that the accused is guilty of a capital offense. Such a prior determination of guilt by the jury carries an automatic death sentence; the jury input stops at that point. Boiled down to its essence, the sentence hearing is designed in theory to benefit the accused by allowing the trial court to reduce his sentence from death to life without parole when the mitigating circumstances so require. The trial court in effect is allowed to act as a sentence reducer if it finds sufficient mitigating circumstances or lack of aggravating circumstances. Sections 13-11-3 and 13-11-4.
The sentence hearing is further differentiated from the trial by what evidence is allowed to be presented.
"... In the hearing, evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13-11-6 and 13-11-7. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements; provided further, that this section shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the state of Alabama...." (Emphasis added.)
Section 13-11-3, Code of Ala.1975.
By definition the trial court is to have latitude and discretion as to what matters may be presented and considered at the hearing. Specifically the trial court is not limited by the exclusionary rules of evidence it is required to adhere to during the actual trial. In short the trial court at the sentence hearing is allowed substantive and procedural flexibility which is generally prohibited during the jury trial.
Thus it is a natural consequence that the trial court having at hand not only the benefit of the facts garnered at the trial, but also the "relevant" and "probative" matters gleaned at the sentence hearing, may make findings of fact which include aggravating and mitigating circumstances which are seemingly at odds with the prior jury determination. Nonetheless, unless a clear abuse of discretion is shown, the trial court's findings of fact will be upheld.
In the case at bar there was sufficient evidence for Count 2 of the indictment to have remained before the jury. This was so by way of the accomplice statute. However, as previously stated, Counts 1 and 3 charged murder in the first degree wherein two or more persons were intentionally killed. The charges in Counts 1 and 3 were in no way connected with a killing for pecuniary gain, nor under those counts was there the necessity of finding that the appellant was an accomplice. Thus, if after the trial and sentence hearing the trial court independently determined that the murders were accomplished pursuant to the charges in Counts 1 and 3 and not Count 2, it was entirely within the trial court's discretion to find that the killings were not committed for pecuniary gain and that the appellant was not an accomplice. Further discussion regarding the trial court's findings of fact after the sentence hearing will be necessary later in this opinion, but for the purpose of this issue we find no abuse of discretion.

III
Prior to trial the appellant filed a "Motion to Require District Attorney to Disclose *55 Evidence." Side bar colloquy by the assistant district attorney regarding State evidence which he considered would be a "bomb" or "big surprise" prompted this motion. The trial court granted the motion and ordered the district attorney's office "to submit to the attorneys for the defendant a list of all witnesses which have been subpoenaed and a list of all witnesses who will be subpoenaed."
At trial the State called their "bomb," Eddie Hebison, a narcotics officer for the state of Texas. Officer Hebison's name was not included on the list of witnesses submitted by the State which included thirty-four names. Officer Hebison's testimony was basically that on March 19, 1976, he went to the "Wet and Wild Lounge" in Houston, Texas, working as cover for his partner, David Hammonds, who was to arrange a drug transaction with the appellant. While sitting at a table with his back to Agent Hammonds and appellant, he heard appellant tell Hammonds "that he would not do any larger drug transaction with him at this time because he was going to Alabama to take care of some family business and kill someone there, and that he had learned that his brother's killing had not been an accident, that it wasthat he had been murdered with a sawed-off shotgun in a drug rip off deal." Appellant did sell a small quantity of marijuana and methamphetamine to Agent Hammonds at that time. In a Texas trial that resulted in a hung jury, Officer Hebison testified against appellant as to that sale in Texas.
Appellant maintains that reversible error occurred when the State called Officer Hebison whose name was not included on the list of witnesses which the court had ordered to be turned over. Appellant contends that had Hebison's name been included the Texas transcript concerning the drug case could have been obtained. Without the Texas transcript, appellant argues he was not able to effectively impeach Hebison and that his right to cross-examination was impaired. We do not agree.
While this court will not sanction disregard of a court order, we have been cited to no authority which would require the State to submit to an accused a list of all the witnesses it expects to call at the accused's trial. In Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666, 671 (1972), this court stated:
"... we do not deem the constitutional right to compulsory process in a criminal case to operate in such a manner as to compel pretrial discovery as to who in fact are witnesses for the State. Rather, the law assumes that defense counsel will act with due diligence so as to have such witnesses as necessary available at trial. Then, by way of compulsory process for obtaining such witnesses, the defendant is secured of a proper presentation of his case at trial...."
In Dolvin v. State, 51 Ala.App. 540, 287 So.2d 250 (1973), fifteen witnesses were listed on the docket sheet at least three days before the trial. This represented two-thirds of the witnesses called by the State. This court in Dolvin, relying in part on the Thigpen decision, held that knowledge of the identity of the fifteen witnesses could have furnished the defense counsel with some indication of the remaining eight witnesses which were called. In Thigpen and Dolvin it was pointed out that the defendant had ample opportunity for a thorough and extensive cross-examination.
In the case at bar the appellant conducted a thorough and sifting cross-examination of Officer Hebison. In addition, Officer Hebison's partner, David Hammonds, was included on the witness list submitted by the State. He, too, had testified in the Texas drug case. Thus access to the Texas transcript, for whatever conceivable defense purpose it might have served, could have been obtained by notice that Hammonds was going to be called as a State witness. Furthermore, Agent Hammonds was called in the instant case and testified to substantially the same facts regarding his conversation with the appellant in the "Wet and Wild Lounge." Thus Hebison's testimony was fully corroborated by an "anticipated" witness. Therefore, the absence of Officer Hebison's name *56 from the State's witness list was harmless at most. ARAP, Rule 45.

IV
After the jury had deliberated approximately four hours, they returned with questions for the court. From the record the following exchange occurred:
"FOREMAN: The questionwe had two questions, really. We'd like to hear a restatement of your charge, and the second question is what happens if there is a hung jury?
"THE COURT: Well, I'm going to answer your first question firstI mean your second question first. Under our legal system in the event that you people cannot reach a unanimous verdict it would be incumbent upon this Court to declare a mistrial, which in effect means that approximately six to eight to twelve weeks from now another jury would be empaneled, another jury would hear the exact same evidence that you heard, would hear the exact same charge that you heard and then it would be submitted to that jury...."
The appellant contends that this charge was erroneous. No exception was taken to this charge. Appellant relies on the "plain error" rule[1] for his preservation of error. ARAP, Rule 45A.
Section 13-11-2(c), Code of Ala.1975, states the course to be followed in the event of a mistrial in a capital felony:
"... The court may enter a judgment of mistrial upon failure of the jury to agree on a verdict of guilty or not guilty or on the fixing of the penalty of death. After entry of a judgment of mistrial, the defendant may be tried again for the aggravated offense, or he may be reindicted for an offense wherein the indictment does not allege an aggravated circumstance. If the defendant is reindicted for an offense wherein the indictment does not allege an aggravated circumstance, the punishment upon conviction shall be as heretofore or hereafter provided by law; however, the punishment shall not be death or life imprisonment without parole."
Appellant asserts that the court's failure to apprise the jury of the option contained in § 13-11-2(c) was prejudicial.
Although the trial court's answer to the jury's question did not comprehensively track all the language of § 13-11-2(c), we hold that the instruction given (or lack of option apprisal) did not constitute "plain error" within the meaning of ARAP, Rule 45A. For that rule to apply there must first be error, and it must be plainly visible in the record. Colley, supra. Here, the trial court's instruction was correct so far as it went. It did not misstate the law. That "another jury could hear the exact same evidence" and "would hear the exact same charge" in the event of a hung jury was a very real possibility and indeed a probability. We note that the trial court's response in no way curbed the jury's right to fail to decide appellant's fate. A "hung jury" could still easily have occurred.
Moreover the "option" to reindict the appellant at a later time for a noncapital offense rested entirely with the State. The "option" would at no time become the "appellant's option." It is sheer speculation whether the jury would have failed to reach a unanimous verdict had they been informed of the State's option. It is further speculation whether the appellant would have been reindicted for a noncapital offense in any event. This court will not base its opinion on speculation or surmise. Thus on this issue we are required to decide whether an omission in the trial court's instruction in response to the jury question effectively deprived appellant of his right to a fair trial free from prejudice. We do not believe that it did. Where a trial court's instruction to the jury is not as full as counsel desires, his remedy is to request written charges covering the matter omitted. Smith v. State, 262 Ala. 584, 80 So.2d 307 (1955). Here, counsel for appellant *57 neither excepted nor requested further instructions to the jury. Accordingly, we hold the "plain error" rule inapplicable in this instance.

V
Several questions are raised concerning the trial court's order after the sentence hearing was conducted. For the sake of clarity we set forth the entire order of the court sentencing the appellant to death.
"The Court having conducted a hearing pursuant to Title (sic) 13-11-3 of the Code of Alabama, to determine whether or not the Court will sentence Mr. Phillip Wayne Tomlin to death or to life imprisonment without parole, and the Court having considered the evidence presented at the trial and at said sentencing hearings; the Court makes the following findings of fact:
"The Court first considers the aggravating circumstances as outlined and described in Title (sic) 13-11-6:
"(a) The Court finds that the Capital Felony was committed by Phillip Wayne Tomlin or that he was present at and assisted in the commission of the Capital Felony;
"(b) The Court finds no evidence that Mr. Phillip Wayne Tomlin was previously convicted of another Capital Felony. However the Court finds that the Defendant has been in and out of trouble with the police on prior occasions;
"(c) The Court finds that other than set out above in subparagraph (b), there is no evidence that the Defendant did knowingly create a great risk of death to many persons;
"(d) The Court finds the Capital Felony was committed while the Defendant was engaged in the commission of a double homicide in violation of Title (sic) 13-11-10;
"(e) The Court finds the Capital Felony was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
"(f) The Court finds the Capital Felony was not committed for pecuniary gain, within the meaning of Title (sic) 13-11-6(6) of the Code of Alabama.
"(g) The Court finds the Capital Felony was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
"(h) The Court finds that Phillip Wayne Tomlin killed or participated in the double murder of Cheryl Moore, a teenager of fifteen years of age, and Richard Brune, a teenager of nineteen years of age, at the Interstate 10 Highway Exit Ramp at Theodore-Dawes, Mobile County, Alabama.
"It is the judgment of the Court that the Capital Felony was especially heinous, atrocious, or cruel.
"The Court now considers mitigating circumstances as described and set out in Section 13-11-7, Code of Alabama.
"(a) The Court finds that Phillip Wayne Tomlin has a history of prior criminal activity;
"(b) The Court finds that the Capital Felony itself was not committed while Phillip Wayne Tomlin was under the influence of extreme mental or emotional disturbance;
"(c) The Court finds that the victims were not a participant in Phillip Wayne Tomlin's conduct, and did not consent to the act.
"(d) The Court finds that Mr. Tomlin was not an accomplice in the Capital Felony committed, but was, in fact a principal who was present and assisted in the commission of the double homicide.
"(e) The Court finds that Phillip Wayne Tomlin did not act under extreme duress or under the substantial domination of another person.
"(f) The Court finds that the capacity of Phillip Wayne Tomlin to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired.
"The Court having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances, it is the judgment of the Court that the *58 aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the Jury should be and is hereby accepted.
"It is therefore considered and adjudged by the Court that Phillip Wayne Tomlin is guilty of the Capital Felony charged in the indictment, and specifically of intentionally killing Cheryl Moore and Richard Brune during the commission of a double murder.
"It is therefore ordered and adjudged that you, Phillip Wayne Tomlin, suffer death by electrocution at any time before the hour of sunrise on the 8th day of March, 1979, inside the walls of the William C. Holman Unit of the Prison System at Atmore, Alabama, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution.
"It is therefore further ordered and adjudged by the Court that the Warden of William C. Holman Unit of the Prison System at Atmore, or in the case of his death, disability, or absence, his Deputy, or in the event of the death, disability, or absence of both the Warden and his Deputy, the person appointed by the Commissioners of Corrections, at any time before the hour of sunrise shall on the 8th day of March, 1979, inside the walls of the William C. Holman Unit of the Prison System at Atmore, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution, cause to pass through the body of said Phillip Wayne Tomlin, a current of electricity of sufficient intensity to cause his death, and the continuance and application of such current through the body of the said Phillip Wayne Tomlin until the said Phillip Wayne Tomlin be dead, and may Almighty God have mercy on Your Soul."
It is argued that certain aggravating circumstances found by the trial court in the above order are not aggravating circumstances as defined in § 13-11-6, Code of Ala.1975. We agree. A basic rule of review in criminal cases is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e. defendants. Ex parte Clements, 370 So.2d 723 (Ala.1979); Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). Penal statutes are to reach no further in meaning than their words. Clements, supra; Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952).
The first aggravating circumstance listed by the trial court, "that the Capital Felony was committed by Phillip Wayne Tomlin or that he was present at and assisted in the commission of the Capital Felony," is not an aggravating circumstance within the meaning of § 13-11-6 and should not be listed as such. That finding is closer akin to a finding of fact as per § 13-11-4. The second sentence of the trial court's finding in paragraph (b) of the aggravating circumstances is inappropriate for the same reason. Likewise is the trial court's fourth aggravating circumstance (d) defective. That "the Capital Felony was committed while the Defendant was engaged in the commission of a double homicide in violation of Title (sic) 13-11-10," is not an aggravating circumstance within § 13-11-6. Section 13-11-10 is not contained in the Code. Also, the first part of the trial court's eighth aggravating circumstance (h), "that Phillip Wayne Tomlin killed or participated in the double murder of Cheryl Moore, a teenager of fifteen years of age, and Richard Brune, a teenager of nineteen years of age, at the Interstate 10 Highway Exit Ramp at Theodore-Dawes, Mobile County, Alabama," is not an aggravating circumstance.
The above "aggravating circumstances" are not contained in the § 13-11-6 language and should not have been included as such in the trial court's sentencing order as aggravating circumstances.
That the capital felony was especially heinous, atrocious, or cruel is an aggravating circumstance under § 13-11-6(8); however, the trial court is required to set out the basis of such a finding. See: Colley, supra; Hubbard v. State, 382 So.2d *59 577 (Ala.Cr.App.1979); Johnson v. State, 399 So.2d 859 (Ala.Cr.App.1979); Alford v. State, 307 So.2d 433, (Fla.1975); State v. Dixon, 283 So.2d 1 (Fla.1973).
To negate one of the mitigating circumstances, the trial court must determine whether appellant has a significant history of prior criminal activity within the meaning of Ex parte Cook, 369 So.2d 1251, 1257 (Ala.1978). It is not sufficient that appellant had a "history of prior criminal activity" to negate the mitigating circumstance of § 13-11-7(1). Appropriate facts which substantiate this finding should be listed.
Though not raised by the appellant, we note that the trial court's order does not contain a statement of the "findings of fact from the trial" as required by § 13-11-4. The pertinent portion of § 13-11-4, Code of Ala.1975, reads as follows:
"... If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include the following:
"(1) One of more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death; and
"(2) Any of the mitigating circumstances enumerated in section 13-11-7 which it finds insufficient to outweigh the aggravating circumstances."
See Johnson, supra, for comprehensive findings of fact accompanied by aggravating and mitigating circumstances by the trial court upon the conclusion of the sentence hearing.
We have carefully searched the record for any error prejudicial to the appellant. We have applied the "plain error rule." After due consideration to the record and to the alleged errors asserted on appeal, it is our opinion that the appellant received a fair trial.
However, due to the deficiencies in the sentencing order, this cause must be remanded with directions that the trial court's order be extended to include findings of fact from the trial and sentence hearing and for a correction of aggravating and mitigating circumstances as defined by the statute and that such be transmitted to this court in answer to the instant remand.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
TYSON and DeCARLO, JJ., concur.
HARRIS, P.J., and BOWEN, J., concur in result only.
BOWEN, Judge, concurring in result.
I disagree with the holding of the majority in Part IV of its opinion.
I concur only in the result reached by the majority because, in my opinion, the plain error rule of ARAP, Rule 45A, does apply to instructions which the trial judge failed to mention to the jury. Omissions from the charge may constitute error just as may misstatements or incorrect charges. The absence of certain instructions, by their very absence, will be just as "plainly visible" as an incorrect charge.
The majority states that the plain error rule is inapplicable but then finds that the omission does not prejudice the defendant. In effect, they apply the plain error rule while denying its applicability. I would merely apply the rule.
NOTES
[1] ARAP, Rule 39(k), concerning certiorari has been held applicable to the trial court's oral instructions. Ex parte Jacobs, 371 So.2d 448 (Ala.1979).