398 So.2d 730 (1979)
Jesse Lee MORRISON
v.
STATE.
4 Div. 660.
Court of Criminal Appeals of Alabama.
July 17, 1979.
After Remandment November 20, 1979.
Rehearing Denied December 18, 1979.
*733 Donald J. McKinnon, Clayton, for appellant.
William J. Baxley, Atty. Gen. and J. Anthony McLain, Asst. Atty. Gen., for the State.
DeCARLO, Judge.
Jesse Lee Morrison was indicted by the Barbour County Grand Jury under § 13-11-2(a)(2), Code of Alabama 1975, for the intentional killing of Marguerite McClenny, committed during a robbery.
The indictment presented on February 13, 1978, reads as follows, omitting the formal parts:
"The Grand Jury of said county charge that, before the finding of this indictment, Jesse Lee Morrison, whose name is to the Grand Jury, otherwise unknown, feloniously took one trucker-type wallet containing five one dollar bills in currency of the United States of America of the value of five dollars and a set of keys and one silver one-half dollar of the value of one-half dollar, all of the total and combined value of five dollars and fifty cents, the personal property of Marguerite McClenny, from her person, and against her will, by violence to her person, or by putting her in such fear as unwillingly to part with the same, and while the said Jesse Lee Morrison, whose name is to the Grand Jury otherwise unknown, was engaged in robbing the said Marguerite McClenny, Jesse Lee Morrison, whose name is to the Grand Jury otherwise unknown, intentionally killed Marguerite McClenny, by shooting her with a gun or pistol, on or about February 4, 1977, contrary to law and against the peace and dignity of the State of Alabama.
"COUNT II
"The Grand Jury of said County further charges that before the finding of this indictment Jesse Lee Morrison, whose name is to the Grand Jury otherwise unknown, feloniously took one trucker-type wallet containing five one-dollar bills in currency of the United States of America of the value of five dollars and a set of keys and one silver one-half dollar of the value of one half dollar, all of the total and combined value of five dollars and fifty cents, the property of Marguerite McClenny, from her person and against her will, by violence to her person, or by putting her in such fear as unwillingly to part with the same, and while the said Jesse Lee Morrison, whose name is to the Grand Jury otherwise unknown, was engaged in robbing the said Marguerite McClenny, the said Jesse Lee Morrison whose name is to the Grand Jury otherwise unknown, unlawfully, and with malice aforethought, intentionally killed Marguerite McClenny, by shooting her with a gun or pistol, on or about February 4, 1977, contrary to the law and against the peace and dignity of the State of Alabama."
Two weeks later, on February 24, 1978, the appellant filed the following motions: for a continuance, a plea in abatement, a motion to quash the indictment, to quash the grand jury venire, for a psychiatric evaluation, for a change of venue, to suppress statement, and to make gun available. All of these motions were denied except the motion to make the gun available, which was granted.
Prior to presenting the State's case, the prosecution "nolle prossed" count two and proceeded with the prosecution on count one, which appears above, over the objection of the defense. On March 13, 1978, a jury was qualified and, after a one-day trial, the jury returned a verdict, finding the defendant guilty as charged in the indictment, and fixed his punishment at death.
*734 The evidence in support of this indictment showed that W. C. McClenny, Jr., was married to the deceased, Marguerite McClenny, and testified that he operated the McClenny Furniture Company, in Eufaula, Alabama, on February 4, 1977.
According to McClenny, he went to his place of business on the date in question around 7:30 A.M. He stated that his wife came to the store that same day, sometime between 8:00 and 8:30 A.M., so that he and his son could be "out that particular day." McClenny stated that he and his son left the store about 9:20 A.M., after his wife returned from making the bank deposit. He said that she remained at the store to carry on the business. McClenny also said that, when he left the store that morning, there was a billfold in a "two-drawer file cabinet" in the store, which contained an "old silver half-dollar" and "five one dollar bills."
During the trial, he identified a key to a 1970 Chevrolet pick-up truck, a key to a 1971 pick-up truck and a padlock, all of which he said were stolen from his store on February 4, 1977. Further, McClenny said that these items were returned to him by Officer Tew of the Alabama Bureau of Investigation and Mr. Gatlin of the district attorney's office. He also stated that the billfold was empty when the officers returned it to him.
On cross-examination, McClenny stated that his wife was wearing two diamond rings and had sixteen dollars in her purse on the day in question. However, McClenny said that the rings and the money were not taken in the robbery.
William Claude McClenny III, the son of the deceased, stated that, on February 4, 1977, at approximately 1:40 P.M., he went to the family furniture business in Eufaula and found his mother lying on the floor behind the counter. According to McClenny, he at first thought his mother might have had a stroke but, when he moved her, he realized that she had been shot.
Further, he recalled that the billfold, which he identified in court, was kept in a "two-drawer file." McClenny said that, when he arrived at the furniture store, he discovered that the drawer was "half open."
Lamar Chapman, the Barbour County Coroner, testified that, on February 4, 1977, he went to the McClenny Furniture store in Eufaula, Alabama. According to Chapman, he examined Mrs. McClenny and found that "she was dead." Further, he said she had "two apparent wounds.... one in the upper left chest area and one in the abdomen."
Chapman testified that he was present when the toxicologist performed an autopsy on the body of Mrs. McClenny at the Chapman Funeral Home. He said that the cause of death was determined to be "[s]hock and hemorrhage due to two gunshot wounds in the chest areaone in the chest area and one in the abdomen."
Corporal A. G. Tew, an investigator for the Alabama Bureau of Investigation, on February 4, 1977, testified that, on that date, he went to the McClenny Furniture store about 2:09 P.M. Upon his arrival, he saw the body of the victim in the office area of the store.
According to Tew, he found two .25 caliber "spent hulls" on the floor. One was found next to the deceased's right shoulder and the other approximately five feet away, under the store counter. Tew stated that the hulls were fired from a .25 caliber automatic and testified that a .25 caliber "live round," which had not been fired, was found near the left knee of the deceased.
During the trial, Tew identified an empty wallet which he said was discovered "in a sewer over in Chattahoochee Courts." He stated that, when he went to retrieve the wallet, he was accompanied by a Mr. Gatlin, an investigator for the district attorney, Sheriff Gilmore of Barbour County and the appellant, Jesse Lee Morrison.
Tew testified that, prior to going to the location of the wallet, he had a discussion with the appellant. He said that, during that time, he did not threaten, coerce, or promise the appellant anything in return for the information leading to the wallet. Tew testified that the appellant signed a *735 waiver of counsel form at approximately 11:00 A.M., on September 19, 1977, seven months after Mrs. McClenny's death.
Tew also identified a .25 caliber pistol, which he stated he had received from Sgt. Ardel Hardaway of the Columbus, Georgia Police Department on September 7, 1977. He acknowledged that the pistol had been in his possession and under his custody and control from the day Sgt. Hardaway turned it over to him.
During cross-examination, Tew acknowledged that he had seen the appellant for the first time at the police department in Franklin, Tennessee. Tew said that, at that time, he was accompanied by Chief Brown of Eufaula and Gatlin, for the purpose of "extradicting Jesse Morrison back to Alabama."
According to Tew, they attempted to question the appellant on their return trip the next day but he refused to sign a waiver of counsel and stated that he did not wish to make a statement without a lawyer present.
Further, Tew testified that James Arthur Thomas had implicated the appellant in the robbery and murder. Tew said that he had received this information on September 3, 1977, at the police department in Rochester, New York. According to Tew, Thomas, while at the New York police station, admitted his involvement in the robbery of the McClenny furniture store.
Tew also testified that James Ellis Morrison, the brother of the appellant, had given him information concerning his brother's involvement in the robbery.
Detective Sgt. Ardel Hardaway of the Columbus, Georgia Police Department, testified that, on September 6, 1977, a man named George Washington came to the Columbus Detective Division and gave him a weapon, which he identified in court as State's Exhibit 26. He said the weapon was later turned over to Officer Tew, on September 7, 1977.
James Arthur Thomas testified that he had known the appellant, Jesse Morrison, for about "twelve or fifteen years." He recalled that, in June, 1977, he had gone with the appellant to the S & W Bar in Columbus, Georgia. Thomas testified that the bar was operated by a Mr. Washington and that they had gone there to sell a gun. According to Thomas, the appellant sold Washington a .25 caliber pistol, which Thomas identified in court as State's Exhibit 26.
Further, Thomas testified that, in April, 1977, shortly after he was released from jail in Rochester, New York, he had a conversation with the appellant in Thomas' home in Eufaula, Alabama. Thomas recalled the conversation, as follows:
"He said him and his brother had went to rob the furniture market and that he asked the lady for the money two or three times and she wouldn't give it up, and she kept giving him the run-around about it, and the last time he asked her she said, `Okay, I'll give you the money,' and he said, `No, bitch, you have been playing with me too long,' and he said he had to shoot her in the heart and then shot her again, and went out to the car and told his brother that he had killed her."
During cross-examination, Thomas admitted that he was "involved in narcotics" with the appellant and his brother. Thomas acknowledged that they had used morphine and heroin while living together in a house in Eufaula.
On further questioning, Thomas acknowledged that the appellant had admitted to him that he had killed the "lady at the furniture store."
Further, Thomas testified that he had learned of the killing from the appellant's brother while he was in jail in Rochester, New York. Thomas said that, at that time, he informed the New York authorities of his conversation with James Morrison, and later told the Alabama authorities.
G. R. McCahan, the State Toxicologist, testified that, on February 4, 1977, he performed an autopsy on the deceased, Marguerite McClenny, at the Chapman Funeral Home in Eufaula, Alabama. McCahan stated *736 that there were two gunshot wounds on the body, both of which had "powder tatooing." McCahan explained "[w]hat I'm saying is that the powder in this case came out and was sufficiently close to the individual to start with that thethat it actually caused a tatooing into the skin of the individual."
According to McCahan, death was "[t]he result of hemorrhage or massive bleeding from two projectile wounds which entered the body and .... that death ... could have been caused by either of these projectiles independent of the other."
Richard Dale Carter was a criminologist and director of the Enterprise laboratory of the Alabama Department of Toxicology and Criminal Investigation. He testified that, on February 4, 1977, he went to Eufaula, Alabama, to investigate the death of Marguerite McClenny.
During the trial, Carter identified a .25 caliber expended cartridge case, which he stated he had found under the counter of the furniture store. He also identified a .25 caliber expended cartridge case which was delivered to him by Officer Tew, and two .25 caliber bullets that had been removed from the body of the deceased.
Carter testified that the Astro .25 caliber semi-automatic pistol, which he identified as State's exhibit 26, had been delivered to him by Officer Tew and Chief Brown. Carter further testified that he had tested the pistol and compared the projectile from the test firing with those taken from the body of the deceased. He stated that, in his opinion, "the two bullets removed from the body of the deceased were fired through the barrel of this weapon."
Carter stated that State Exhibit 34, an unspent or unfired round of .25 cartridge, was examined, and, in his opinion, it had been at one time, "worked through the mechanism of a weapon." He explained that it had "markings on it that are consistent with the clip marks and extractor marks."
According to Carter, when he tested the weapon he had loaded it with three rounds. The first round was fired and the expended cartridge ejected. The second live round "didn't chamber fully into the weapon.... It had to be ejected by hand to feed the third round in this case." Carter added, when the second round fell out, the third round chambered and the weapon fired successfully.
Further, Carter said that he noticed the wound on the left side of the victim, and, in his opinion, it was a "contact wound." However, he said he did not remember noting any "powder tatooing ... around the wound" in the upper chest area.
During cross-examination, Carter admitted that he had no way of knowing if the weapon in question had malfunctioned on any other occasion, or if it had malfunctioned in a different manner.
B. J. Gatlin, the Investigator-Trial Coordinator to the Circuit Court of Barbour and Bullock Counties, testified that he first met the appellant, Jesse Lee Morrison, in Franklin, Tennessee. He stated that, at the time, he was with Officer Tew, Chief Brown and an officer of the sheriff's office in Franklin, and that the purpose of the visit to Tennessee was to extradite the appellant to Alabama.
According to Gatlin, he interviewed the appellant in the Eufaula courthouse on September 15, 1977. He stated that he advised the appellant of his Miranda rights and the appellant told him that he understood them. Gatlin stated that the appellant signed a "Waiver of Counsel" form and that no one in his presence or to his knowledge threatened the appellant or promised him any hope of reward if he made a statement.
During the trial, Gatlin identified State's Exhibits 36 and 37 as the Waiver of Counsel form which the appellant had signed and the statement made by appellant.
When the statement was presented as evidence, the defense objected, assigning as grounds "those matters that were submitted to this court on the hearing for a motion to suppress." The court, at that time, said, "Considering the testimony of this witness taken today in court, and also *737 the evidence introduced in a hearing before the Court prior to today on a motion to suppress, I overrule your objection."
The statement by the appellant reads, in pertinent part:
"On February the 4th, 1977, at about 11 o'clock A.M., my brother, James Morrison, and I were riding around in my 1971 green Pontiac, two-door car. I drove to the McClenny Furniture store where I parked the car in front. James stayed in the car. I went in with a .25 caliber automatic pistol to rob the place. I indicated to the lady that this was a robbery. She didn't take me serious and in a way she dismissed me. I pulled my pistol and put it on her and tried to put a rope around her neck. She acted like she was scared of the gun and kept pushing the gun away from her. I shot her and then took a black, trucker's-type billfold out of a cabinet. The billfold had two or three keys in it with five, one-dollar bills in it. We left there and went to Willie James Williamson's house where I gave James two dollars of the money. I told James to `be cool' and not to say anything to Ruby.' Signed, Jesse L. Morrison and witnessed by myself and Corporal A. G. Tew."
During cross-examination, Gatlin admitted that he told the appellant that this was a "death penalty case; that he could be sentenced to die in the electric chair," but stated that he did not tell the appellant that if he signed the confession, "that would probably help things go a little easier for him." According to Gatlin, the appellant said he had "caused his family enough embarrassment and he just wanted to get it cleared up."
At the end of Gatlin's testimony, the State rested its case, subject to a request to call one additional witness concerning the chain of custody of the gun in question.
The appellant did not testify, but offered the testimony of the following witnesses:
Deputy Charles Bennett Horton, of the Barbour County Sheriff's Department, testified that, on September 15, 1977, he was present with Investigator Gatlin, Sheriff Gilmore, Deputy Green Crawford, Assistant District Attorney Sam LeMaistre, Jr., and Officer Tew, when the appellant was questioned. He stated that the appellant made a statement to the effect:
"... that he and his brother went to the McClenny Furniture store on 82; that he was the one that went inside the store and perpetrated the robbery; that he was in the process of the robbery and he was attempting to tie Mrs. McClenny up with a piece of rope that he had carried in the store with him; that in the attempt, with one hand holding the gun and the other hand holding the rope, there was a scuffle between he and Mrs. McClenny; that her hand hit the weapon and caused the weapon to discharge."
Deputy Green Crawford, of the Barbour County Sheriff's Department, testified that, on September 15, 1977, he was present during the questioning of the appellant and then escorted the appellant back to jail. Crawford stated that as he was leaving, the appellant said, "I want to talk to you." Crawford said he went back in and asked the appellant what he wanted to talk about. The appellant then said, "I want to confess and tell what happened." Crawford said that he told the appellant "no don't talk to me."
According to Crawford, the appellant was subsequently taken to the "council room" by himself and Sheriff Gilmore, and the assistant district attorney, Officer Tew and Gatlin then joined them. Crawford said the appellant was seated and, upon questioning by Gatlin, the appellant told them what had happened.
Crawford testified that the appellant told them that "he went to Mrs. McClenny's not with the intention to kill her but to rob her and he did rob her and he had a rope and that they got in a scuffle." Crawford said that, after the appellant made the statement, he then read it and told Gatlin, "You haven't put everything in it that I said," and Gatlin replied that he would do so.
During cross-examination, Crawford stated that the appellant had made the statement *738 "[o]f his own free will," and that the appellant had said that he wanted to "get it off his conscience." Further, Crawford said that, after the appellant read the statement, he [appellant] signed it.
Sheriff Charlie Gilmore of Barbour County gave testimony which was substantially the same as that given by Deputy Crawford.
Hugh Mack Brown, Chief of Police for the City of Eufaula, testified on behalf of the appellant, and his testimony was also substantially the same as that given by Deputy Crawford.
Officer A. G. Tew described the automatic pistol in question and said that it had a "grip safety" and that it took a "good bit of pressure to squeeze the trigger." He added that, when the defense attorney grabbed the pistol, or was holding it, it went off. He explained that "[i]t went off or [he] made it go off by pulling it."
At the end of Tew's testimony, a hearing was held in chambers outside the presence of the jury wherein the trial judge made sure that the appellant understood his right to refuse to testify. The court also told the appellant that, if he exercised his right not to testify, the district attorney could not comment to the jury on his failure to do so. After a discussion with his attorney, the appellant informed the court that he did not wish to testify and the defense rested its case.
At that point, the State called Floyd C. Washington, who testified that he operated a business in Columbus, Georgia. He identified State's Exhibit 26 as a .25 caliber pistol, which he purchased from three black males for ten dollars. However, Washington stated that it was almost impossible for him to identify the people from whom he had purchased the pistol. According to Washington, he later turned the pistol over to Sgt. Hardaway.
Upon completion of Washington's testimony, the case was submitted to the jury for their deliberations at 6:00 P.M., and twenty minutes later the jury returned with the following verdict:
"We the jury find the defendant guilty as charged in the indictment and fix his punishment at death."
At that time the jury was polled and their individual responses indicated that it was a unanimous verdict.
After the jury was polled, the appellant was adjudged guilty, and April 7, 1978, was selected for the hearing of evidence by the State and the appellant, which they deemed relevant "in mitigation or aggravation" of the offense. On April 7, the hearing was held and the prosecution and the defense presented arguments and testimony.
The State presented no testimony, but argued merely that one of the aggravating circumstances of the offense which resulted in the death of Mrs. McClenny, was the fact that it was committed for pecuniary gain. The district attorney also recounted the appellant's criminal offense record, noting those arrests resulting in convictions and those which did not. Some of the previous charges against him included burglary; two robberies, one of which was in Barbour County; petty larceny; and assault with a weapon.
At the end of the State's argument, the defense presented Sheriff Gilmore as its first witness at the sentencing hearing. He testified that the appellant had "behaved himself" and had not given him any trouble. Further, Gilmore said that, at the time the appellant confessed, he acted like he was "sorry for what he did and he wanted to confess and get it over with."
Deputy Crawford, of the Barbour County Sheriff's Department, was called next, and his testimony was substantially that of Sheriff Gilmore.
Earlene Smith, the appellant's aunt, testified that she did not have personal knowledge that her nephew was involved with drugs but said that she had heard it. She stated that, on one occasion, she had noticed that the appellant might have been using drugs when he came to see her. On that occasion, he was passing through the city and was accompanied by Arthur Thomas.
*739 Antonette Wilson testified that she had been the appellant's girlfriend and stated that she had known him for about a year. She recalled the occasion when the appellant and Arthur Thomas had robbed Lemuel Lee. She stated that the appellant had prevented Arthur Thomas from killing Lee during the robbery.
James Ellis Morrison, brother of the appellant, testified that the appellant left home because he had had "a few ups and downs with my father." He said that prior to Mrs. McClenny's death, the appellant had taken drugs "a lot." He stated that the appellant had used heroin and morphine and added that, on the day of Mrs. McClenny's death, he believed that his brother was using drugs.
Further, Morrison stated that the appellant would "have a personality change" when he was "high" and when he was not "high" he was "edgy." Morrison said that, at the time he and his brother went to the McClenny Furniture store, it was not their intention to shoot Mrs. McClenny, but only to rob her.
Jesse Morrison took the stand in his own behalf, and stated that, prior to Mrs. McClenny's death, he was using morphine and heroin. Further, he said that, when he was unable to get the drugs, he would be "aggravated" and have "[h]eadaches, chills, [and] sweats." He went on to explain that, just prior to the shooting, he had been without drugs for some two days.
He also explained that he left home at an early age because he could not get along with his parents, which was primarily because of the company he had been keeping.
At the completion of the appellant's testimony, at the sentencing hearing, the defense attorney made his summation, in which he summarized the testimony which had been given in the appellant's behalf. He also remarked that the appellant was repentant and was not a cold-blooded murderer who would kill without regard for mankind.
At the end of the summation, the trial judge stated that he had considered the evidence in the case and the evidence presented at the sentencing hearing, and made the following findings:
"FINDINGS OF FACT PURSUANT TO SECTION 13-11-4 OF ALABAMA DEATH PENALTY ACT
"This day a hearing was held by the Court as required by Section 13-11-3 of the Alabama Code of 1975, to determine whether or not the Court will sentence the defendant to death or to life imprisonment without parole. Upon consideration of the evidence presented at such hearing as well as the evidence presented on the trial of the case the Court finds the facts to be as follows: On the 4th day of February, 1977, the defendant and his brother went to the McClenny Furniture Company in Eufaula, Alabama, for the purpose of committing a robbery. The defendant's brother, James Morrison, remained in the automobile while the defendant went inside for such purpose. Mrs. Marguerite McClenny was in charge of the store at the time the defendant entered and was alone. Mrs. McClenny had just returned from the bank where she had deposited almost all of the money on hand at the store on that day, keeping only $5.00. The defendant deliberately shot her either in the stomach or chest and while she was immobilized by such shot and in no position to present any threat to him he undertook to shoot her a second time, although the first shot was sufficient to cause death. In attempting to fire the second shot his pistol jammed and it was necessary for him to manually extract the live round of ammunition and place another round in the chamber, at which time he completed his vicious execution of Mrs. McClenny. Whereupon, he left with the fruits of his crime, which consisted of a trucker's-type wallet which contained $5.00 in currency, a silver one-half dollar and several keys to various vehicles belonging to the McClenny Furniture Company. These items were later recovered in a storm sewer which was pointed out to them by the defendant after he had been apprehended some months later and had confessed to the crime.

*740 "This is a charge under Section 13-11-2(a)(2) of the Alabama Death Penalty Act, which was a robbery where the victim was intentionally killed by the defendant.
"I find as a fact that the capital felony was committed while the defendant was engaged in the commission of a robbery under Section 13-11-2(a)(2) of the Alabama Death Penalty Act, and was committed for pecuniary gain under Section 13-11-6(6) of said Act. In accordance with the definitions of heinous, atrocious or cruel as contained in the opinion rendered by the Alabama Court of Criminal Appeals in the Jerry Wayne Jacobs case, heinous meaning `extremely wicked or shockingly evil;' atrocious meaning `outrageously wicked or vile;' and cruel meaning `design to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others,' it is the opinion of the Court, from the manner in which the two shots were fired, that is, deliberate separate acts requiring physical effort other than merely pulling the trigger, that such act was heinous, atrocious or cruel and the Court is of the opinion that the added aggravating circumstance provided for by Section 13-11-6(8) is present as well as the other two aggravating circumstances mentioned above.
"The defendant has no significant history of prior criminal activity under (1) of Section 13-11-7 of the Code as far as convictions are concerned, but he has one conviction of possessing a dangerous weapon and has a long list of arrests and presently has pending against him, in this Court, a charge of Armed Robbery. The Court does not find from a consideration of the evidence taken on the trial of the case or at this hearing the existence of any mitigating circumstances as provided for in Section 13-11-7 and, therefore, concludes that the mitigating circumstances under such Section are insufficient to outweigh the aggravating circumstances in this case and that the Jury verdict should not be disturbed. The Court, therefore finds that the punishment of this defendant should be fixed by the Court at death.
"Dated this 7th day of April, 1978
 "/s/ Jack W. Wallace
 Jack W. Wallace,
 Judge
 Third Judicial Circuit
 of Alabama."
The constitutionality of the Alabama Death Penalty Statute was decided in Jacobs v. State, Ala.Cr.App., 361 So.2d 607, affirmed, Ala., 361 So.2d 640.

I
The appellant contends that the trial court committed reversible error when it permitted the State to "nolle prosse" count two of the foregoing indictment and allowed the case to proceed to trial before the jury on count one.
As can be seen, count one charged the appellant with the intentional killing of Marguerite McClenny during the course of a robbery. Count two of the indictment charged the appellant with robbery and with unlawfully, "with malice aforethought," intentionally killing Marguerite McClenny.
Prior to its opening statement, the State made a motion to "nolle prosse" count two of the indictment and be allowed to proceed with the trial on count one. The trial court granted the motion over the objection of defense counsel.
It is competent for the State prosecutor, with the permission of the trial court, to enter a nolle prosequi as to one or more counts in the indictment. Jackson v. State, 21 Ala.App. 284, 107 So. 725.
No error was committed in allowing the case to be tried before the jury on count one, which did not allege malice aforethought. The statute under which the appellant was indicted addresses intentional killing during the course of robbery, rather than first degree murder.

*741 II
Appellant complains that the trial court committed reversible error when it excused a juror, Eugene Atkins, because of his opposition to capital punishment.
That excusal came during a hearing out of the presence of the jury, as follows:
"THE COURT: Gentlemen, yesterday, after we had adjourned, Mr. Eugene Atkins, who is present in court now this morningI asked him to come here at 8 o'clock this morning before you started striking a juryapproached me and stated that he had thought about the matter further and that he did not believe that he could impose a death penalty. Is that correct?
"MR. ATKINS: That's right.
"THE COURT: Now, let me ask you some questions here that I have written out, and I think they state the proposition in correct language. Do you have any conscientious scruples or moral convictions or religious opposition to the use of the death penalty in the proper case, and I believe you said you did.
"MR. ATKINS: Yes, sir, I do.
"THE COURT: And is this opinion, an opposition to death, an opinion that you have had for a long time and one that would not be influenced in this case?
"MR. ATKINS: Yes, sir, I do.
"THE COURT: And is this opinion, and opposition to death, an opinion that you have had for a long time and one that would not be influenced in this case?
"MR. ATKINS: Yes, sir.
"THE COURT: Is it your position that if you are selected as a juror in this case that your opposition to the death penalty is such that you would not return a verdict which carried with it the death penalty regardless of the evidence and the instructions of the Court as to the law?
"MR. ATKINS: Yes, sir.
"THE COURT: In other words, if you are satisfied, based upon the evidence, that the accused is guilty as charged, and the Court instructs you that the penalty for the crime is death, you would not return a verdict of guilty; is that correct?
"MR. ATKINS: That's correct, sir.
"THE COURT: All right, sir.
"MR. REEVES: I challenge for cause.
"THE COURT: All right, sir. Do you want to ask him any questions?
"MR. McKINNON: No, sir.
"THE COURT: All right. I'll honor your challenge.
"MR. McKINNON: Your Honor, we would like to record an exception.
"THE COURT: All right. Strike your jury now."
The test for excluding a venireman, because he or she has voiced a general opposition to the death penalty, or has expressed conscientious or religious scruples against its infliction, was established in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. The test was reiterated in Davis v. Georgia, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339, wherein the United States Supreme Court stated:
"Unless a venireman is `irrevocably committed before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings'... he cannot be excluded; if a venireman is improperly excluded even though not so committed, any subsequently imposed death penalty cannot stand." [Emphasis added.]
It appears, from the above quoted portion of the record that venireman Atkins was irrevocably committed to vote against the death penalty before the trial began, regardless of the facts and circumstances that might have emerged during the trial. Therefore, the trial court was not in error in granting the State's challenge for cause.

III
The appellant insists that his written confession was the product of an arrest warrant issued without probable cause and that its introduction into evidence was error.
The affidavit upon which the arrest warrant for appellant was issued for the charge of murder, reads as follows (omitting the formal parts):

*742 "Before me, Beverly Reeves, Magistrate-Warrant Clerk, in and for said County, personally appeared H. M. Brown who being duly sworn, deposes and says, on oath, that in said County on or about February 4, 1977 one Jesse Lee Morrison, alias, unlawfully and with malice aforethought, killed Margurite [sic] L. McClenny by shooting her with a gun or pistol against the peace and dignity of the State of Alabama ...."
For the charge of robbery, the affidavit upon which the arrest warrant was issued reads, as follows (omitting the formal parts):
"Before me, Beverly Reeves, Magistrate-Warrant Clerk, in and for said County, personally appeared H. M. Brown who being duly sworn, deposes and says, on oath that in said County on or about February 4, 1977 one Jesse Lee Morrison, alias feloniously took $5.00 in United States Currency the value of Five Dollars the property of Margurite [sic] L. McClenny from her person, and against her will, by violence to her person, or by putting her in such fear as unwillingly to part with the same against the peace and dignity of the State of Alabama...."
The Supreme Court of the United States, in Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, mandated that the probable cause requirements under the Fourth Amendment, as they pertain to the issuance of search warrants, were also applicable to the issuance of arrest warrants. There, the Supreme Court required:
"[T]hat the judicial officer issuing such a warrant [for arrest or search] be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant."
See also, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.
Facially, the affidavits in the present case are conclusory. Each states mere conclusions by the affiant that the appellant committed the two offenses in question. The source of the affiant's conclusions and some of the underlying circumstances for those conclusions are not present. Under this information alone, the affidavits were not sufficient to enable the magistrate to make an independent determination of probable cause.
However, this alone does not, in and of itself, make the arrest unlawful or the warrants defective. Oral testimony is admissible to cure an otherwise defective affidavit made to secure an arrest, when the affiant has the information in his possession which he disclosed to the issuing magistrate before obtaining the warrant. Malone v. State, 51 Ala.App. 19, 282 So.2d 367. See also, Funches v. State, 53 Ala.App. 330, 299 So.2d 771.
The affiant, Hugh Mack Brown, Chief of Police of Eufaula, Alabama, stated that it was upon his affidavits that the two arrest warrants were issued. He testified that, in addition to the information contained in the affidavits, he told Beverly Reeves, the issuing magistrate, that he had written statements from Ruby Morrison and from James Morrison (the appellant's brother), implicating the appellant in the robbery and the killing of Marguerite McClenny. Further, he stated that Mr. Gatlin and Officer Tew had interviewed Arthur Thomas in New York and that Thomas had also implicated the appellant in the two offenses.
Although Ms. Reeves testified that she did not recall whether Mr. Brown gave her any additional verbal information, the trial judge ruled that Brown's additional testimony was given at the time the affidavit was made.
The general rule in Alabama, regarding conflicting testimony given at a suppression hearing, is that such testimony poses a question for the trier of fact. Smith v. State, Ala.Cr.App., 351 So.2d 668. Therefore, when conflicting evidence is presented before a trial judge, great weight is given to its findings. Ard v. State, Ala. Cr.App., 362 So.2d 1320. The finding of a trial judge will not be disturbed on appeal *743 unless this court is convinced that the conclusion reached by the trial judge was palpably contrary to the weight of the evidence. Smith v. State, Ala.Cr.App., 346 So.2d 382.
In the instant case, we find that the ruling of the trial judge was supported by substantial evidence. The additional oral testimony by Chief Brown, under these circumstances, was sufficient to establish probable cause for the issuance of the arrest warrants.
Further, the record reveals that the appellant was advised of his constitutional rights on at least four different occasions and the testimony was sufficient to show that he was fully informed of his Miranda rights. He was not threatened, coerced or given any promises in order to obtain his written statement.
Therefore, we find that the trial court was correct in permitting appellant's statement to be offered into evidence.

IV
The appellant complains that the trial court committed reversible error in refusing to suppress defendant's "confession," after appellant had been denied counsel.
It is argued that the confession was incomplete because it failed to include that portion of his verbal "confession" (of which the written "confession" was to be a summary) wherein the appellant stated the shooting was the result of an accidental firing during his struggle with the victim.
As can be seen from the written statement signed by the appellant, which appeared in the foregoing statement of evidence in this case, appellant does not mention an accidental firing as the result of a struggle. This allegation was brought out in the testimony of Deputies Horton and Crawford, both deputy sheriffs of Barbour County. They testified that the appellant told them during the time he was making his statement to B. J. Gatlin, that the deceased had struggled with him, causing the pistol to discharge accidentally.
The appellant was advised of his constitutional rights and signed a waiver of counsel before he gave his statement to Gatlin. He was not threatened or promised any reward or given any hope or placed in fear in order to induce him to make the statement.
Conflicting evidence, regarding whether or not the confession was voluntarily made, presents a question for the consideration of the trial judge, who presides over the suppression hearing. His findings will not be disturbed on appeal unless they are palpably contrary to the weight to evidence. Ard v. State, supra.
The testimony of Deputies Horton and Crawford, that the appellant told them that the shooting was accidental, was before the jury for their consideration in addition to the appellant's signed written confession. We, therefore, find that the trial court did not commit reversible error in permitting the confession into evidence on the grounds that the statement was incomplete.
The appellant also complains that the trial court committed reversible error when it permitted the appellant's confession to be offered into evidence, because the confession was secured after the appellant had been denied counsel.
The transcript of evidence shows that, shortly after the Tennessee authorities released the appellant into the custody of Gatlin, Tew, and Brown, he was advised of his constitutional rights and asked if he wished to sign a waiver of counsel form and make a statement. At that time, he replied that he did not wish to make a statement and stated that he wanted an attorney.
The following day, after returning to Eufaula, Alabama, the appellant stated that he wished to make a statement. At that time, he was once again advised of his Miranda rights and signed a waiver of counsel form prior to making a written statement.
Any person arrested who asserts his right to counsel may later change his mind and voluntarily submit to questioning. See United States v. Hodge, 487 F.2d 945 (5th Cir., 1973); Jennings v. United States, 391 F.2d 512 (5th Cir., 1968).
*744 In the present case, no contention is made that the appellant was denied either food or rest. Further, the present case does not indicate a long and protracted examination of the accused nor does it indicate that he was being held incommunicado or had been subjected to threats or abuse. The record in the present case demonstrates the contrary. See also, Gibson v. State, Ala.Cr. App., 347 So.2d 576; Anderson v. State, Ala.Cr.App., 339 So.2d 166.
Under these circumstances, we are of the opinion that the trial court's determination of the voluntary nature of appellant's statement was correct, and that it was properly admitted. Luschen v. State, 51 Ala.App. 255, 284 So.2d 282; Crowe v. State, 54 Ala. App. 121, 305 So.2d 396.

V
The appellant asserts that the trial court committed reversible error when it admitted into evidence a photograph of an automobile abandoned by the appellant near his home in Eufaula, Alabama.
It is argued that the State showed merely that the car had been owned by the appellant and that it had been parked for some period of time. Further, it is alleged that, since no evidence was given concerning whether the car would run or when it was parked, the photograph had absolutely no probative value on the question of appellant's flight.
The admissibility of a photograph comes within the purview of the trial court's discretion and is reviewable only to determine if there had been an abuse of that discretion. See McElroy, Alabama Evidence, § 207.01(2), at 458 (3rd ed. 1977).
The transcript of evidence in this case reveals that the automobile depicted in the photographs complained of was the same automobile used in the robbery and killing. This fact was admitted by the appellant in his signed written statement.
Further, Officer Tew testified, on re-direct examination, that State's Exhibits Nos. 27, 28 and 29 were pictures of an automobile which he had verified, within the probate office, as belonging to Jesse Morrison.
Therefore, under these circumstances, we see no error prejudicial to appellant in the admission of the photographs and find that they were properly admitted into evidence.

VI
It is asserted that the trial court committed reversible error in refusing to permit appellant to present evidence of irregular law enforcement procedures. Counsel for appellant argues that the jury had the right to consider all the facts and circumstances leading to the confession in order to determine what weight to give the confession.
During an in camera hearing, outside the presence of the jury, appellant's counsel informed the court that he wished to go into the facts and circumstances surrounding the issuance of the arrest warrants. This was objected to by the State, and the trial court sustained the objection.
In the present case, the arrest warrants were issued on September 6, 1977, and the appellant was taken into custody by the Alabama authorities on September 14, 1977. The following day, on September 15, 1977, the appellant made a written confession, after being advised of his Miranda rights, and signed the waiver of counsel form. The trial judge determined that the arrest warrants were legally sufficient and were based upon probable cause.
Under the above facts, we do not feel that the issuance of the warrants for the appellant's arrest was in any way relevant to facts or circumstances surrounding his confession.
The appellant was taken into custody by the Alabama authorities and made his confession voluntarily one week after the warrants for his arrest were issued. During the trial, appellant was afforded ample opportunity to cross-examine the officer who obtained his confession and counsel for the appellant made good that opportunity.
Under these circumstances, we believe that the State sufficiently established the voluntariness of the confession, and the *745 jury heard all relevant testimony surrounding the appellant's statement. Therefore, we find no error in the trial court's refusal to permit the appellant to present the testimony in question.

VII
It is maintained that the trial court abused its discretion in denying the appellant's motion for a continuance. Counsel for appellant argues that, as defense counsel, he was not given sufficient time to make adequate preparations for appellant's trial. He insists that this denied the appellant his constitutional right to effective assistance of counsel.
This court, in King v. State, 47 Ala.App. 360, 254 So.2d 432, stated:
"An application for continuance on the ground that counsel has not had sufficient time to prepare for trial is addressed to the sound discretion of the trial judge, and the exercise of such discretion is not subject to review except for gross abuse. ..."
In the present case, the record indicates that appellant secured counsel on February 2, 1978, and a jury was not struck until March 13, 1978. Under these circumstances, we cannot say that the trial judge abused its discretion in denying appellant's motion for a continuance.

VIII
It is contended that the trial court committed reversible error when it denied the appellant's plea in abatement, motion to quash the indictment, and motion to quash the grand jury venire. Appellant argues that the grand jury indicting and the jury convicting him were selected in a manner which violated State and federal laws. Further, he said that the under-representation of the areas in the "eastern division of Barbour County, outside of Beat Five," indicated an intentional exclusion of an identifiable group. He also maintains that persons of the black race were systematically excluded from the grand jury in conflict with State statutes and the constitution of the United States.
During the hearing on the plea in abatement and these motions, a member of the jury commission testified that the list of jurors was compiled from the list of qualified voters in the county, tax lists and telephone directories, and that the jury list was bound and kept in the tax collector's office.
She testified that the commission met in September, October and November of each year, usually in Clayton, Alabama, but that sometimes it met in Eufaula. Further, she stated that the county was divided into beats and that the jury lists were purged on a yearly basis of those who had died or moved away.
The district attorney, who was the prosecuting attorney before the grand jury, testified that six members of the grand jury which indicted the appellant were black.
From the facts presented, the appellant has not demonstrated a substantial disparity between the percentage of black residents in the county and the blacks on the jury list.
There is a presumption that no legal fraud exists with reference to the system used for the selection of jurors in the absence of proof to the contrary or an offer of such proof. Nixon v. State, 291 Ala. 657, 286 So.2d 315. The appellant has not met this burden of proof, and no evidence is shown in the record that the jury roll did not represent a cross-section of the community. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

IX
It is the appellant's contention that it was error for the trial court to charge the jury in the following manner:
"As a general proposition of law it is reasonable for a jury to infer that a person ordinarily intends all of the natural and probable consequences of his acts which are knowingly and intentionally done. So, unless the evidence in the case leads a jury to a different conclusion the jury may draw the inference and find that the accused intended all the natural *746 and probable consequences which one standing in like circumstances, possessing like knowledge, should reasonably have expected to result from any act knowingly done by him."
Appellant claimed that the foregoing instruction to the jury regarding intent was, in essence, an application of the "felony-murder doctrine" and was in violation of Alabama's death penalty statute.
Immediately following the above instruction, the court instructed the jury in the following manner:
"THE COURT: All right. Intent means a state of mind of a person at the time he does an act, the act together with the state of mind constituting the charged crime. So you look to whatever act that you find in this evidence was done there on that occasion in connection with this case and determine what was done by this defendant, and determine from those acts and all the other facts in the case, what the defendant's intent was."
The portion of the trial court's oral charge first quoted above, which is complained of by the appellant as an application of the "felony-murder" doctrine, was a correct proposition of law, and in no way relieved the jury of finding, from the evidence, that the appellant had formed an intent to kill. On the contrary, the above quoted portion of the trial court's oral charge, which followed the disputed portion, clearly instructs the jury that they must find the specific intent on the part of the appellant to take human life, beyond a reasonable doubt or to a moral certainty, before they could find him guilty. Therefore, the trial court's instruction as to the appellant's intent in the commission of the above charged offense, when read with the surrounding remarks by the court, was not prejudicial and did not warrant a reversal.

X
It is claimed that the refusal of the following written charge requested by the appellant was error.
"If you find that the defendant is guilty of first degree murder but find that the defendant did not intentionally kill Mrs. McClenny as alleged in the indictment, they you must find the defendant `not guilty.'"
This charge requested by the appellant was affirmative in nature and seems to suggest the application of the "felony-murder doctrine," which has no application under the Alabama Death Penalty Statute, under which appellant was being tried.
At any rate, the identical import of the requested charge was given in its instructions by the trial court to the jury. Walker v. State, 265 Ala. 233, 90 So.2d 221; § 12-16-13, Code of Alabama, 1975.
From the record, the court's instruction appears, as follows:
"I think this case really comes down to this, Lady and Gentlemen, and I want to put it to you in two different questions. There are two questions that this jury must answer: First, did the defendant rob Marguerite McClenny in Barbour County, Alabama, as I have defined robbery to you? Second, did the defendant intentionally kill Marguerite McClenny in Barbour County, Alabama, in the course of said robbery? If each and every one of you are convinced beyond a reasonable doubt and to a moral certainty that the answer to each of these questions is yes, your verdict should be guilty. If you are not so convinced, your verdict should be not guilty." [Emphasis added.]

XI
It is also contended that the refusal of the following charge requested by the appellant was error:
"Defendant's proposed charge number 3
"In order to find the defendant guilty under the indictment, you must find:
"1. That the defendant committed the crime of robbery against the person of Mrs. Marguerite McClenny:
"2. That the defendant while engaged in committing that robbery intentionally killed Mrs. Marguerite McClenny; and
*747 "3. That the defendant killed Mrs. Marguerite McClenny with malice aforethought."
The appellant insists that the failure of the court to instruct the jury that it must find the existence of "malice aforethought" as a necessary prerequisite to conviction was reversible error.
In the present case, the appellant was indicted under § 13-11-2(a)(2), Code of Alabama 1975, which includes:
"Robbery or attempts thereof when the victim is intentionally killed by the defendant." [Emphasis added.]
Count one of the indictment, upon which the case was tried charged, in pertinent part, that: "... Jesse Lee Morrison... intentionally killed Marguerite McClenny, by shooting her with a gun or pistol..." [Emphasis added.]
The foregoing portion of the Alabama Death Penalty Statute specifically designates an intentional killing. Nowhere in the statute is it required that malice aforethought be alleged or proved. All that is required is that the defendant (appellant), during the robbery, intentionally killed the victim.
Further, count one of the indictment sufficiently "tracked" the Death Penalty Statute. The trial court is under no duty to grant the charge to the contrary. Boulden v. State, 278 Ala. 437, 179 So.2d 20.

XII
The appellant next contends that his conviction should be reversed because of failure of the evidence to conform to the indictment, the verdict and the court's findings of fact.
The appellant argues that there were several inconsistencies between the evidence, the indictment, the jury verdict, and the court's findings. However, the only one asserted by the appellant in brief is that it was alleged that the appellant took a wallet and other items from the person of the deceased when, in fact, they were removed from a drawer in the store in which she was working.
Count one of the indictment, upon which the appellant was convicted, charged the appellant with feloniously taking a wallet containing five dollars, a set of keys and a one-half dollar from the person of Marguerite McClenny. Appellant claims this was a fatal variance between the indictment and the proof.
This court, in Mays v. State, Ala.Cr.App., 335 So.2d 246, stated:
"To sustain a charge of robbery it is not necessary that the stolen property be in the actual physical contact with the person of the victim but it is sufficient if the property is taken from his presence or personal protection...."
Under the above facts, no variance was made to appear.
In addition, the appellant claimed that the following finding of fact by the trial court was "totally devoid of any evidence to support his findings."
The Court's findings stated:
"In attempting to fire the second shot his pistol jammed and it was necessary for him to manually extract the live round of ammunition and place another round in the chamber, at which time he completed his vicious execution of Mrs. McClenny."
The appellant argues that this finding of fact regarding the intent of the appellant was based on mere speculation and, together with the foregoing inconsistencies of the evidence, demands reversal of the conviction.
The trial court, in considering the fact that the pistol jammed, and that it required manual extraction of the live round in order to fire the weapon, again made the following finding:
"In accordance with the definitions of heinous, atrocious or cruel as contained in the opinion rendered by the Alabama Court of Criminal Appeals in the Jerry Wayne Jacobs' case, heinous meaning `extremely wicked and vile,' and cruel meaning `designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others,' it *748 is the opinion of the Court, from the manner in which the two shots were fired; that is, deliberate separate acts requiring physical effort other than merely pulling the trigger, that such act was heinous, atrocious or cruel and the Court is of the opinion that the added aggravating circumstance provided for by Section 12-11-6(8) [13-11-6(8)] is present...."
Richard Dale Carter, the criminologist in criminal investigation, testified that the pistol was used in the killing and that, when he test-fired the pistol, the second round jammed and had to be manually extracted before the second shot could be fired. Further, there was also testimony that a live round of ammunition was found on the floor of the store next to the deceased.
Therefore, it is our judgment that this testimony was sufficient to support the trial court's finding of fact.

XIII
The appellant contends that the Alabama Death Penalty Statute is unconstitutional and is in violation of the Eighth and Fourteenth Amendments of the United States Constitution.
The constitutionality of the present Alabama Death Penalty Statute was upheld in Jacobs v. State, Ala.Cr.App., 361 So.2d 607, affirmed, Ala., 361 So.2d 640, and subsequently upheld in Evans v. State, and Ritter v. State, Ala.Cr.App., 361 So.2d 654. Affirmed as to Evans, Ala., 361 So.2d 666. See also, Keller v. State, Ala.Cr.App.1979, 380 So.2d 926, and Hubbard v. State, Ala. Cr.App.1979, 382 So.2d 577.

XIV
After a careful scrutiny of this record and transcript of evidence, we find this case must be affirmed, but nevertheless we must remand this cause to the trial court with directions to conduct another sentencing hearing in strict compliance with the mandate in Ex parte Cook, Supreme Court of Ala., 369 So.2d 1251.
During the sentencing hearing, as is shown by the foregoing recitation of facts, the trial judge considered criminal charges against the appellant which did not result in convictions. He found, also, that the capital felony was committed for pecuniary gain. Both of these findings are in conflict with the decision of the Alabama Supreme Court. Ex parte Cook, supra.
Therefore, it is our opinion that the judgment of conviction by the Barbour Circuit Court be affirmed, and the cause remanded with directions.
AFFIRMED: REMANDED WITH DIRECTIONS.
HARRIS, P. J., and TYSON, BOWEN, JJ., concur.
BOOKOUT, J., concurs specially.
BOOKOUT, Judge, concurring specially:
I concur in the result reached by the majority and likewise concur in most of what is stated in the majority opinion. However, I would go further on remandment by holding that in a capital robbery case it is impermissible to find as an aggravating circumstance that the "capital felony was committed in the course of a robbery." The basic crime charged is robbery, and the circumstance which elevates it to a capital felony is the intentional killing. To say that the crime of "robbery ... when the victim is intentionally killed by the defendant" is aggravated by being committed "in the course of a robbery" is condemning the defendant twice for the same actrobbery or stealing money.
In my opinion, the same rationale expressed in Cook, supra, applies to the instant circumstance. There, the Alabama Supreme Court declared that "pecuniary gain" could not be used as an aggravating circumstance where the charge is capital robbery because the defendant would be condemned twice for the same actstealing money. In other words, pecuniary gain is a circumstance of every robbery. Likewise, every capital robbery occurs during the commission or attempt to commit robbery. Since robbery or attempted robbery is an *749 element of capital robbery, it could not logically be considered as an aggravating circumstance of the latter. The same reasoning is set out in a part of my concurring opinion in Johnson v. State, Ala.Cr.App. 1979, ___ So.2d ___.

AFTER REMANDMENT
DeCARLO, Judge.
After remandment, the Barbour Circuit Court in conformity with our opinion in this case, supra, conducted another sentencing hearing and resentenced the appellant. The trial court, in compliance with the mandate of Cook v. State, supra, made the following written findings:
"STATE OF ALABAMA )
 ) IN THE CIRCUIT COURT OF
 "PLAINTIFF, )
 ) BARBOUR COUNTY, ALABAMA
 "-VS- )
 ) EUFAULA DIVISION
"JESSIE LEE MORRISON, )
 ) CRIMINAL ACTION CC-78-10014
 "DEFENDANT. )
 "FINDINGS OF FACT PURSUANT TO
 SECTION 13-11-4 OF
 ALABAMA DEATH PENALTY ACT
"In this cause the Alabama Court of Criminal Appeals affirmed the conviction of the abovenamed defendant, Jessie Lee Morrison, for the offense under Section 13-11-2(a)(2), Code of Alabama, 1975, for the intentional killing of Marguerite McClenny, committed during a robbery, however, for the errors committed by this court in the sentencing hearing under Section 13-11-3 the case was remanded by the appellate court with directions to conduct another sentencing hearing in strict compliance with the mandate in Ex parte Recardo Cook, Supreme Court of Alabama, 369 So.2d 1251. By order dated August 14, 1979, this cause was set for hearing on September 12, 1979, at the courthouse in Eufaula, Alabama.
"On September 12, 1979, came the defendant, accompanied by his privately retained counsel, Hon. Donald J. McKinnon, and the State of Alabama being represented by its District Attorney, Hon. Ben C. Reeves, said cause came on for hearing and an opportunity was allowed the defendant and the State of Alabama to present further evidence and to make further arguments. It was agreed by and between the defendant and the State of Alabama that the testimony taken upon the previous sentencing hearing held on April 7, 1978, would be introduced as evidence upon this hearing and considered by the court with the exception of those matters previously determined to be improper and inadmissible by the Alabama Court of Criminal Appeals. The defendant was given an opportunity to present any further evidence and was not limited in any respect to the matters listed in the Code as mitigating circumstances but was specifically told by the court that any matter that he wished to bring to the attention of the court which he thought would be helpful to the court in making its determination would be heard. The defendant, however, had no further evidence except a newspaper article showing that one James A. Thomas had been arrested and charged with rape of a twelve year old girl. James A. Thomas was a witness on the trial of this case and gave testimony damaging to the defendant. Although the court allowed the newspaper article to be introduced in evidence as Defendant's Exhibit "A" the court gives no weight to such evidence as tending to impeach such witness as he has only been charged and not convicted for this alleged offense which occurred subsequent to the trial of this defendant. The attorneys made further arguments and submitted this matter to the court upon such arguments, the one item of evidence just referred to and upon the evidence taken at the former sentencing hearing, at which time the matter was taken under advisement by the court.
"Upon consideration of the evidence presented at the sentencing hearing held on September 12, 1979, as well as the evidence presented on the trial of the case and the evidence submitted at the former sentencing hearing held on April 7, 1978, the court finds the facts to be the same as previously found at the conclusion of said former hearing, which are as *750 follows: On the 4th day of February, 1977, the defendant and his brother went to the McClenny Furniture Company in Eufaula, Alabama, for the purpose of committing a robbery. The defendant's brother, James Morrison, remained in the automobile while the defendant went inside for such purpose. Mrs. Marquerite McClenny was in charge of the store at the time the defendant entered and was alone. Mrs. McClenny had just returned from the bank where she had deposited almost all of the money on hand at the store on that day, keeping only five dollars. The defendant deliberately shot her either in the stomach or chest and while she was immobilized by such shot, and in no position to present any threat to him, he undertook to shoot her a second time, although the first shot was sufficient to cause death. In attempting to fire the second shot his pistol jammed and it was necessary for him to manually extract the live round of ammunition and place another round in the chamber, at which time he completed his vicious execution of Mrs. McClenny. Whereupon, he left with the fruits of his crime, which consisted of a trucker's-type wallet which contained five dollars in currency, a silver one-half dollar and several keys to various vehicles belonging to the McClenny Furniture Company. These items were later recovered in a storm sewer which was pointed out to them by the defendant after he had been apprehended some months later and had confessed to the crime.
"This is a charge under Section 13-11-2(a)(2) of the Alabama Death Penalty Act, which was a robbery where the victim was intentionally killed by the defendant.
"The court finds as a fact that the capital felony was committed while the defendant was engaged in the commission of a robbery under Section 13-11-2(a)(2) of the Alabama Death Penalty Act and that the aggravating circumstances as provided in Section 13-11-6(4) of said act exist in this case.
"In accordance with the definitions of heinous, atrocious or cruel as contained in the opinion rendered by the Court of Criminal Appeals in the Jerry Wayne Jacobs case (361 So.2d 607), heinous meaning `extremely wicked or shockingly evil'; that atrocious means `outrageously wicked and vile'; and, that cruel means `designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others,' it is the opinion of the court that, from the manner in which the two shots were fired; that is, deliberate, separate acts requiring physical effort other than merely pulling the trigger, that such act was heinous or atrocious and that the aggravating circumstances found in Section 13-11-6(8) also exists in this case.

"The court has also reviewed the evidence in relation to the mitigating circumstances contained in Section 13-11-7 and finds that the defendant has no significant history of prior criminal activity and, thus, the mitigating circumstance provided in Section 13-11-7(1) is present.
"The court has carefully considered the other listed mitigating circumstances under said Section 13-11-7 and finds no others exist.
"The court informed the defendant that mitigating circumstances would not be limited to those listed under Section 13-11-7 but that he was free to present any evidence which he felt would have a mitigating effect in this case and which he felt would be helpful to the Court in making its decision. The court has considered such evidence and finds that the facts developed by the defendant do not mitigate the offense.
"The court finds from a consideration of the evidence taken on the trial of the case; at the previous sentencing hearing and at the hearing held on September 12, 1979, that the two aggravating circumstances listed in Section 13-11-6(4) and (8) exist in this case, either of which is sufficient to support the sentence of death. The court further finds that the mitigating circumstance enumerated in Section 13-11-7(1) is insufficient to out-weigh *751 the aggravating circumstances and that there are no other mitigating circumstances in the case. The court, therefore, finds that the punishment of this defendant should be fixed by the court at death.
"Dated this 18th day of September, 1979.
 "/s/ Jack W. Wallace
 Jack W. Wallace, Judge
 Third Judicial Circuit
 of Alabama." [Emphasis added.]
In our judgment the findings of the trial court are fully supported by the evidence in this case. Therefore, the judgment of conviction and sentence of death by the Barbour Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.